EXHIBIT A

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

### STATE OF LOUISIANA

2015 NOV -3  A 10: 05

NO: 2015· 10509

DIVISION
A

SECTION: 15
CIVIL
DISTRICT COURT

AMON MERRITT and SANDRA MERRITT

### VERSUS

**TEXACO INC.; STAR ENTERPRISES; MOTIVA ENTERPRISES, LLC; SAUDI REFINING, INC; RADIATOR SPECIALTY COMPANY; UNITED STATES STEEL CORPORATION; BERRYMAN PRODUCTS, INC.; SHELL OIL COMPANY; MURPHY OIL COMPANY; GENUINE PARTS COMPANY; SAFETY-KLEEN SYSTEMS, INC.; ASHLAND INC.; UNIVAR USA, INC. f/k/a CHEMCENTRAL; UNION OIL COMPANY OF CALIFORNIA d/b/a UNOCAL; CHEVRON USA INC.; CRC INDUSTRIES, INC.; HUNT OIL COMPANY; HUNT REFINING COMPANY; EXXONMOBIL CORPORATION; SOLO MARINE INC.; BLACK TOWING, INC., TURNER INDUSTRIES GROUP, LLC, 3M COMPANY, BARRIERE CONSTRUCTION CO., L.L.C. and WOODWARD DESIGN + BUILD, LLC**

FILED: _____      _____
                                                    **DEPUTY CLERK**

### ORIGINAL PETITION FOR DAMAGES

The Petition of Amon Merritt and Sandra Merritt, through undersigned counsel respectfully represent:

**1.**

The Petitioners are of the full age of majority; at all times mentioned herein, Amon Merritt (hereinafter "Petitioner" or "Amon Merritt") was caused to come into direct and indirect contact with, handle, inhale, ingest and otherwise be exposed to the benzene-containing products and/or the vapors from such products, which were manufactured, produced, processed, compounded, converted, sold, marketed, distributed, supplied and/or otherwise placed into the stream of commerce by Defendants named herein, resulting in injuries, losses and damages to Amon Merritt. Sandra Merritt is and at times relevant hereto was the spouse of Amon Merritt.

**2.**

The defendants are:

a.      Upon information and belief, Defendant **TEXACO, INC** (hereinafter "Texaco" or "Defendant") is a Corporation organized and existing under the laws of the State of Delaware having its principal place of business at 2000 Westchester Ave., White Plains, NY 10650.

At all times material hereto, this Defendant owned, operated and controlled the Star Texaco

1

Refinery where Petitioner worked in 1993 as the employee of Wyatt Field Services, an independent contractor providing new construction services, whereat he was caused to be exposed to benzene and benzene-containing process streams.

At all times material hereto, this Defendant manufactured, designed, marketed, sold and supplied benzene-containing products, including but not limited to, gasoline and solvents used in co-Defendants' products, that the Petitioner worked with and around and which caused him benzene exposure.

b.    Upon information and belief, Defendant **STAR ENTERPRISES** (hereinafter "Star" or "Defendant"), is a Joint Venture between Shell Oil Company and Texaco Inc.

Defendant is sued to the extent that it is a successor in interest to the liabilities of the Star Texaco Refinery.

c.    Upon information and belief, Defendant **MOTIVA ENTERPRISES, LLC** (hereinafter "Motiva" or "Defendant"), is a Joint Venture owned by Shell Oil Company and Saudi Refining.

Defendant is sued to the extent that it is a successor in interest to the liabilities of the Star Texaco Refinery.

d.    Upon information and belief, Defendant **SAUDI REFINING, INC.** (hereinafter "Saudi" or "Defendant") is a foreign corporation having its principal place of business at 9009 West Loop South, Houston, TX 77096.

Defendant is sued to the extent that it is a successor in interest to the liabilities of the Star Texaco Refinery.

e.    Upon information and belief, Defendant **TURNER INDUSTRIES GROUP, LLC** (hereinafter "Turner" or "Defendant") is a domestic corporation organized and existing under the laws of the State of Louisiana, having its principal place of business at 8687 United Plaza Blvd., Baton Rouge, LA 70809.

At all times material hereto, this Defendant performed new construction, turnarounds and maintenance where Petitioner worked and caused Mr. Merritt to be exposed to benzene and benzene-containing process streams.

f.    Upon information and belief, Defendant **RADIATOR SPECIALTY COMPANY** (hereinafter "Radiator" or "Defendant") is a foreign corporation organized and existing under the laws of the State of North Carolina having its principal place of business at 1900

2

Wilkinson Boulevard, Charlotte, NC 28208.

At all times material hereto, this Defendant manufactured, designed, marketed, sold and supplied benzene-containing products, including but not limited to, Liquid Wrench, that the Petitioner worked with and around and which caused him benzene exposure.

g.   Upon information and belief, Defendant **UNITED STATES STEEL CORPORATION,** (hereinafter "US Steel" or "Defendant") is a foreign corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 600 Grant Street, Room 1500, Pittsburgh, PA 15219-2800.

At all times material hereto, this Defendant manufactured, designed, marketed, sold and supplied benzene-containing products, including but not limited to, Raffinate for use in Liquid Wrench, that the Petitioner worked with and around and which caused him benzene exposure.

h.   Upon information and belief, Defendant **BERRYMAN PRODUCTS, INC.** (hereinafter "Berryman" or "Defendant") is a foreign corporation organized and existing under the laws of the State of Texas, having its principal place of business at 3800 E. Randolph Mill Road, Arlington, TX 76011.

At all times material hereto, this Defendant manufactured, designed, marketed, sold and supplied benzene-containing products, including but not limited to, B-12 Chemtool, that the Petitioner worked with and around and which caused him benzene exposure.

i.   Upon information and belief, Defendant, **SHELL OIL COMPANY** (hereinafter "Shell") is a foreign corporation organized and existing under the laws of the State of Delaware, having its principal place of business at One Shell Plaza, 910 Louisiana Street, Houston, TX 77002.

At all times material hereto, this Defendant manufactured, designed, marketed, sold and supplied benzene-containing products, including but not limited to, gasoline, brake cleaners, carburetor cleaners and solvent ingredients used in co-Defendants' products, that the Petitioner worked with and around and which caused him benzene exposure.

Defendant is also sued to the extent that it is a successor in interest to the liabilities of the Star Texaco Refinery.

j.   Upon information and belief, Defendant, **MURPHY OIL CORPORATION** (hereinafter "Murphy" or "Defendant") is a foreign corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 200 Peach Street, PO Box

3

7000, El Dorado, AR 71731-7000.

At all times material hereto, this Defendant manufactured, designed, marketed, sold and supplied benzene-containing products, including but not limited to, gasoline, that the Petitioner worked with and around and which caused him benzene exposure.

k.  Upon information and belief, Defendant **GENUINE PARTS COMPANY** (hereinafter "Genuine Parts" or "Defendant") is a foreign corporation organized and existing under the laws of the State of Georgia, having its principal place of business at 2999 Circle 75 Parkway, Atlanta, GA 30339.

At all times material hereto, this Defendant manufactured, designed, marketed, sold and supplied benzene-containing products, including but not limited to, NAPA branded brake cleaners, NAPA branded carburetor cleaners, B-12 Chemtool, Liquid Wrench and other co-Defendants' products, that the Petitioner worked with and around and which caused him benzene exposure.

l.  Upon information and belief, Defendant **SAFETY-KLEEN SYSTEMS, INC.** (hereinafter "Safety-Kleen" or "Defendant") is a foreign corporation organized and existing under the laws of the State of Wisconsin, having its principal place of business at 5360 Legacy Drive, Building 2, Suite 100, Plano, TX 75024.

At all times material hereto, this Defendant manufactured, designed, marketed, sold and supplied benzene-containing products, including but not limited to, Parts Washing Solvent and Parts Washing Machines, that the Petitioner worked with and around and which caused him benzene exposure.

m.  Upon information and belief, Defendant **ASHLAND, INC.,** (hereinafter "Ashland" or "Defendant") is a foreign corporation or other business entity organized and existing under the laws of the Commonwealth of Kentucky, having its principal place of business at 50 E. Rivercenter Boulevard, Covington, KY 41012.

At all times material hereto, this Defendant manufactured, designed, marketed, sold and supplied benzene-containing products, including but not limited to, NAPA branded brake cleaner, NAPA branded carburetor cleaner, and solvents used in B-12 Chemtool, CRC Brakleen products, CRC carburetor cleaner products and other co-Defendants' products, that the Petitioner worked with and around and which caused him benzene exposure.

n.  Upon information and belief, Defendant **UNIVAR USA, INC. f/k/a CHEMCENTRAL,**

4

Individually and as Successor in Interest to Chemcentral (hereinafter "Univar" or "Defendant") is a foreign corporation or other business entity organized and existing under the laws of the State of Delaware, having its principal place of business at 17425 NE Union Hill Road, Redmond, WA  98052.

At all times material hereto, this Defendant manufactured, designed, marketed, sold and supplied benzene-containing products, including but not limited to, solvents used in co-Defendants' products, that the Petitioner worked with and around and which caused him benzene exposure.

o.   Upon information and belief, Defendant **UNION OIL COMPANY OF CALIFORNIA, d/b/a UNOCAL** (hereinafter "Unocal" or "Defendant") is a foreign corporation or other business entity organized and existing under the laws of the State of California, having its principal place of business at PO Box 6028, San Ramon, CA 94583.

At all times material hereto, this Defendant manufactured, designed, marketed, sold and supplied benzene-containing products, including but not limited to, solvent used in Safety-Kleen Parts Washing Solvent, B-12 Chemtool and other co-Defendants' products, that the Petitioner worked with and around and which caused him benzene exposure.

p.   Upon information and belief, Defendant **CHEVRON USA INC.** Individually and as Successor In Interest to Gulf Oil Company and Texaco Inc. (hereinafter "Chevron USA" or "Defendant") is a domestic corporation or other business entity organized and existing under the laws of the Commonwealth of Pennsylvania, having its principal place of business at 575 Market Street, San Francisco, CA 94105.

At all times material hereto, this Defendant manufactured, designed, marketed, sold and supplied benzene-containing products, including but not limited to, gasoline and solvents used in co-Defendants' products, that the Petitioner worked with and around and which caused him benzene exposure.

At all times material hereto, this Defendant owned, operated and controlled the Gulf Alliance Refinery where Petitioner worked in approximately 1986 as the employee of an independent contractor providing new construction services, whereat he was caused to be exposed to benzene and benzene-containing process streams. Petitioner also worked on Chevron oil wells, compressor station and tank battery located in Venice, Louisiana in 1977 for Labor Crews, Inc.

5

Defendant is also sued to the extent it is the successor in interest to the liabilities of Texaco Inc.

q.      Upon information and belief, Defendant **CRC INDUSTRIES, INC.** (hereinafter "CRC" or "Defendant") is a foreign corporation or other business entity organized and existing under the laws of the Commonwealth of Pennsylvania, having its principal place of business at 885 Louis Drive, Warminster, PA 18974.

At all times material hereto, this Defendant manufactured, designed, marketed, sold and supplied benzene-containing products, including but not limited to, brake cleaners, carburetor cleaners, CRC Brakleen products and CRC carburetor cleaner products, that the Petitioner worked with and around and which caused him benzene exposure.

r.      Upon information and belief, Defendant **HUNT OIL COMPANY** (hereinafter "Hunt Oil" or "Defendant") is a foreign corporation or other business entity existing under the laws of the State of Delaware, having its principal place of business at 1900 North Akard Street, Dallas, Texas 75201-2300.

At all times material hereto, this Defendant manufactured, designed, marketed, sold and supplied benzene-containing products, including but not limited to, solvent used in Safety-Kleen Parts Washing Solvent other co-Defendants' products, that the Petitioner worked with and around and which caused him benzene exposure.

s.      Upon information and belief, Defendant **HUNT REFINING COMPANY** (hereinafter "Hunt Refining" or "Defendant") is a foreign corporation or other business entity existing under the laws of the State of Delaware, having its principal place of business at 2200 Jack Warner Parkway, Suite 400, Tuscaloosa, AL 35401.

At all times material hereto, this Defendant manufactured, designed, marketed, sold and supplied benzene-containing products, including but not limited to, solvent used in Safety-Kleen Parts Washing Solvent and other co-Defendants' products, that the Petitioner worked with and around and which caused him benzene exposure.

t.      Upon information and belief, Defendant **EXXONMOBIL CORPORATION** (hereinafter "ExxonMobil" or "Defendant") is a foreign corporation or other business entity existing under the laws of the State of New Jersey, having its principal place of business at 5959 Las Colinas Boulevard, Irving, TX 75039.

At all times material hereto, this Defendant manufactured, designed, marketed, sold and

supplied benzene-containing products, including but not limited to, solvents used in co-Defendants' products, that the Petitioner worked with and around and which caused him benzene exposure.

Defendant is also sued to the extent that it is the successor in interest to the Tenneco Chalmette Refinery.

u.   Upon information and belief, Defendant **SOLO MARINE, INC.** (hereinafter "Solo" or "Defendant") is a domestic corporation or other business entity existing under the laws of the State of Louisiana, having its principal place of business at PO Box 130, Berwick, LA 70342-0130. At times material hereto, including in 1980 – 1981, Petitioner was employed by Solo and exposed to benzene upon navigable waters.

v.   Upon information and belief, Defendant **BLACK TOWING, INC.** (hereinafter "Black" or "Defendant") is a domestic corporation or other business entity existing under the laws of the State of Louisiana, having its principal place of business at PO Box 1213, Morgan City, LA 70381-1213. At times material hereto, including in 1980 – 1981, Petitioner was employed by Solo and exposed to benzene upon navigable waters.

w.   Upon information and belief, Defendant **3M COMPANY** (hereinafter "3M" or "Defendant") is a foreign corporation organized and existing under the laws of the State of Deleware, having its principal place of business at 3M Center, TAX 224-5N-40, St. Paul, MN 55144-1000.

At all times material hereto, this Defendant manufactured, designed, marketed, sold and supplied benzene-containing products, including but not limited to, solvents, that the Petitioner worked with and around and which caused him benzene exposure.

x.   Upon information and belief, Defendant **BARRIERE CONSTRUCTION CO., L.L.C. f/k/a BARRIER CONSTRUCTION CO., INC.** (hereinafter "Barriere" or "Defendant") is a domestic corporation organized and existing under the laws of the State of Louisiana, having its principal place of business at One Galleria Blvd., Ste. 1650, Metairie, Louisiana 70001.

At all times material hereto, this Defendant performed new construction, turnarounds and maintenance where Petitioner worked and caused Mr. Merritt to be exposed to benzene and benzene-containing process streams.

7

y.     Upon information and belief, Defendant **WOODWARD DESIGN + BUILD, LLC f/k/a CARL E. WOODWARD, INC.** (hereinafter "Woodward" or "Defendant") is a domestic corporation organized and existing under the laws of the State of Louisiana, having its principal place of business at 1000 S. Jefferson Davis Parkway, New Orleans, LA 70125. At all times material hereto, this Defendant performed new construction, turnarounds and maintenance where Petitioner worked and caused Mr. Merritt to be exposed to benzene and benzene-containing process streams.

## Jurisdiction and Venue

### 3.

Plaintiff specifically alleges that exposure to benzene and benzene containing products, in combination with other benzene-containing products, caused his benzene-related injuries including CML("chronic myeloid leukemia"). Thus, venue is proper for these defendants and is proper for all defendants pursuant to Louisiana Code of Civil Procedure Articles 42(2) and 73. Defendants, **WOODWARD DESIGN + BUILD, LLC and BARRIERE CONSTRUCTION CO., LLC** are domestic corporations with principal places of business located in Orleans Parish. Plaintiff was exposed to products, distributed, manufactured, sold, installed or removed by the above-referenced defendants. Plaintiff specifically alleges that these products, in combination with other benzene-containing products, caused his CML. Thus, venue is proper for these defendants and is proper for all defendants pursuant to Louisiana Code of Civil Procedure Articles 42(2) and 73.

### 4.

The defendants are all corporations, companies or other business entities which in their own right, and/or as successors-in-interest to certain assets and/or liabilities of predecessor corporations, who were during all times material hereto and for a time prior thereto, have been and/or are engaged, directly or indirectly, in the manufacture, production, processing, compounding, converting, selling, distributing, marketing and/or otherwise placing into the stream of commerce, benzene-containing products, all of which were used as an integral part of the business of Petitioner's employer, in its day to day operation, at the above location.

### 5.

The defendants are jointly and severally liable to the Petitioner for all losses, damages, and injuries suffered herein together with legal interest thereon from the date of judicial demand, for all costs of this litigation including expert witness fees, for the following reasons to-wit:

8

**6.**

At all times relevant herein and for a time prior thereto, defendants have been and/or engaged, directly or indirectly, in the manufacture, production, processing, compounding, converting, selling, distributing, marketing and/or otherwise placing into the stream of commerce, benzene-containing products, all of which were used as an integral part of the business of Petitioner's employers, in their day to day operations. At all times relevant herein and for a time prior thereto, defendants have been and/or engaged, directly or indirectly, in the ownership, operation and control of refineries and chemical plants where benzene and benzene-containing process streams, products and materials are refined, processed, transported, stored and otherwise present, and whereat Petitioner was exposed to benzene as an employee of independent contractors providing new construction services.

**7.**

At all times material hereto, Petitioner was caused to come into direct and indirect contact with, handle, inhale, ingest and otherwise be exposed to benzene while working with and around using Defendants' benzene-containing products and upon Defendants' premises.

**8.**

At all times material hereto, it was the business of Amon Merritt's employers to provide, *inter alia* automotive mechanical and gasoline station services and new construction services.

**9.**

At all times relevant herein, Amon Merritt was employed as a mechanic, gasoline station attendant and boilermaker.

**10.**

From approximately 1981-2001, Petitioner worked as a boilermaker, at Defendants' refineries and chemical plants located in Louisiana, which are identified herein, whereat he was exposed to benzene as the result of new construction services provided by him as an employee of independent contractors. For periods of time between approximately 1967 and 1982, Petitioner worked as a mechanic at Anders Tire Service on Highway 25 in Lucedale, Mississippi where he was exposed to Defendants' benzene-containing products. From approximately 1979 to 1980, Petitioner worked as a mechanic at Farmers Supply Co. in Lucedale, Mississippi whereat he was exposed to Defendants' benzene-containing products. From approximately 1989 to 1991 Petitioner worked as a mechanic and attendant at a Spur gasoline station in Lucedale, Mississippi where he was exposed to

the Defendants' benzene-containing products. From approximately 1967–1990 Petitioner performed mechanical work on vehicles outside of the context of his employment where he was exposed to the Defendants' benzene-containing products.

### 11.

Petitioner was exposed to these benzene-containing products, manufactured, produced, processed, compounded, converted, sold, distributed, marketed, supplied and/or placed into the stream of commerce by defendants named herein, at the above-referenced employer's facility, by means of inhalation, ingestion and dermal absorption, (from direct and indirect contact with said benzene-containing products and/or dermal contact with materials which were contaminated by said products).

### 12.

Petitioner was diagnosed with Chronic Myeloid Leukemia, (hereinafter "CML") on July 01, 2014 and filed a workers compensation suit on June 11, 2015 within one year of learning of the connection between his CML and exposure to benzene.

### 13.

#### Discovery Rule/Contra Non Valentum

The prescriptive period does not start until the plaintiffs knew or should have known that Mr. Merritt's cancer was caused by benzene. Here, the result of the Mr. Merritt's exposure to benzene was inherently undiscoverable. The cancer took years to develop, and even when the symptoms did manifest, neither the physicians, Mr. Merritt, nor the plaintiffs detected the link between Mr. Merritt's benzene exposures and his malignancies. Neither Mr. Merritt nor the plaintiffs ever heard or saw anything that linked benzene to Mr. Merritt's cancer. This cancer was the product of exposure to benzene over a period of time rather than at a point in time. Hence, the prescription period did not start until Mr. Merritt and plaintiffs learned about the cause of his CML leukemia. Mr. Merritt filed a workers compensation suit within one year of his diagnosis, which tolls prescription for any tort suit. Petitioner first learned of the connection between his CML exposures on or after August 21, 2014. Petitioner filed a workers compensation lawsuit on June 11, 2015, which is within one year of his diagnosis of CML.

## COUNT I - NEGLIGENCE

### 14.

Petitioner hereby adopts and incorporates by reference each and every statement and allegation contained in Paragraphs 1 through 11 herein, as if each of said paragraphs were set forth herein with particularity.

### 15.

Petitioner was required, on an almost daily basis, as a condition of his employment, to work with and come into direct and indirect contact with defendants' benzene-containing products.

### 16.

Petitioner, as a foreseeable end user of such products, did continuously handle and was directly and indirectly exposed to said benzene-containing products and/or vapors therefrom, that would be released into the atmosphere of the work area, for extended periods of time, on a daily basis, in their ordinary and foreseeable use.

### 17.

Defendants knew, or in the exercise of reasonable care, should have known that persons employed, such as Petitioner, would be required to and would, in fact, come into direct and indirect contact with, handle, ingest, inhale and otherwise be directly and indirectly exposed to defendants' benzene-containing products and/or vapors therefrom.

### 18.

At all times material hereto, defendants knew, should or could have reasonably known that the benzene-containing products, manufactured, produced, processed, compounded, converted, sold, marketed, supplied, distributed and/or otherwise placed in the stream of commerce by them, to Petitioner's employer and to Petitioner, were inherently defective, ultra-hazardous, dangerous, deleterious, poisonous and otherwise highly harmful to the Petitioner and persons similarly situated.

### 19.

At all times material hereto, Petitioner and other persons similarly situated, as the end user of the benzene-containing products, manufactured, produced, processed, compounded, converted, sold, marketed, supplied, distributed and/or otherwise placed in the stream of commerce by defendants, did not and could not know of the nature and extent of the danger to their bodies, including the various systems, organs and tissues therein, and the dangers to their general health that could or would result from their coming into direct and indirect contact with, handling, ingesting, inhaling

11

and otherwise being exposed to benzene-containing products and/or vapors therefrom, resulting from the ordinary and foreseeable use of said benzene-containing products.

**20.**

At all times material hereto, each of the defendants knew, should and/or could have reasonably determined that Petitioner and other end users of their benzene-containing products, who were similarly situated, would come into direct and indirect contact with, handle, inhale, ingest and otherwise be exposed to benzene-containing products and/or vapors therefrom, during the ordinary and foreseeable use of said benzene-containing products.

**21.**

Despite this knowledge, which each defendant either possessed or reasonably could and/or should have known, through the exercise of due diligence, defendants manufactured, produced, processed, compounded, converted, sold, marketed, supplied, distributed and/or otherwise placed in the stream of commerce, and failed and omitted to provide Petitioner and other end users of benzene-containing products, similarly situated, with any warnings or notices, or sufficient or adequate warnings or notices, to provide them with knowledge as to the dangers to their health in coming into direct and indirect contact with, handling, inhaling and otherwise being exposed to benzene-containing products and/or vapors therefrom.

**22.**

Despite this knowledge, which each defendant either possessed or reasonably could and/or should have known, through the exercise of due diligence, defendants manufactured, produced, processed, compounded, converted, sold, marketed, supplied, distributed and/or otherwise placed in the stream of commerce, and failed and omitted to provide Petitioner and other end users of benzene-containing products, similarly situated, with any warnings or notices, or sufficient or adequate warnings or notices, to provide them with knowledge as to the reasonably safe and sufficient safeguards, wearing apparel, safety equipment and applications necessary to protect them from being injured, poisoned, disabled, killed or otherwise harmed by working with, coming into direct and indirect contact with, handling, inhaling and otherwise being exposed to benzene-containing products and/or vapors therefrom.

**23.**

Despite this knowledge, which each defendant either possessed or reasonably could and/or should have known, through the exercise of due diligence, defendants omitted to place any warnings

or notices, or adequate and sufficient warnings and notices, on the containers, spray paint guns and/or other apparatuses or containers, in which the benzene-containing products were contained or used, or shipping and billing documents, regarding the known or potential risks, dangers and harm therefrom and precautions necessary to be taken prior to their ordinary and foreseeable  use by Petitioner and other end users similarly situated.

24.

Despite this knowledge, which each defendant reasonably knew, should and/or could have known, through the exercise of due diligence, defendants continued to sell, market, distribute, supply and/or otherwise place into the stream of commerce known cancer-causing products, to-wit, benzene-containing products.

25.

Defendants likewise failed and omitted to package the said benzene-containing products so that, in the ordinary and foreseeable use and handling of them, Petitioner and other persons similarly situated would not come into direct and indirect contact with, handle, inhale and otherwise be exposed to such products and/or vapors therefrom.

26.

At all times material hereto, defendants knew, should and/or could have known that the failure and/or omission to provide any warnings or notices, or adequate and sufficient warnings and notices on the containers or drums, in which the benzene-containing products were contained, or shipping and billing documents, regarding the risks, dangers and harm there from and the precautions necessary to use said benzene-containing products, safely for their ordinary and foreseeable use would act as an inducement to Petitioner and other end users similarly situated, to come into direct and indirect contact with, handle, ingest, inhale and otherwise be exposed to benzene-containing products and/or vapors therefrom, without proper wearing apparel, safety equipment or appliances necessary to protect them from being injured, poisoned, disabled, killed or otherwise harmed.

27.

At all times material hereto, defendants knew, should and/or could have known, but also failed to take reasonable, sufficient and proper precautions reasonably calculated to reach and warn persons such as Petitioner, and other end users similarly situated, to advise them of how to adopt and implement a safe, sufficient and proper plan and method to properly handle and use their benzene-

13

containing products, resulting in the creation of an atmosphere wherein Petitioner believed these benzene-containing products were relatively safe to handle, come in contact with and breathe.

### 28.

As the direct and proximate result of the aforesaid negligence, failures and omissions, of the Defendants, individually, jointly and severally, Petitioner was caused to contract and suffer AML and other serious harm and injury to his body, including the various systems, organs and tissues therein, causing him great pain, suffering, mental anguish and humiliation.

### 29.

As the direct and proximate result of the aforesaid negligence, failures and omissions, of the defendants, individually, jointly and severally, Petitioner was obliged, to spend large sums of money to care for and treat his disease and injuries.

### 30.

As the direct and proximate result of the aforesaid negligence, failures and omissions, of the defendants, individually, jointly and severally, Petitioner was caused to suffer through numerous painful procedures and courses of medical treatment, in an effort to treat his disease and prolong his life.

## COUNT II - BREACH OF WARRANTY

### 31.

Petitioner hereby adopts and incorporates by reference each and every statement and allegation contained in Paragraphs 1 through 28 herein, as if each of said paragraphs were set forth herein with particularity.

### 32.

The defendants, individually, jointly and severally either expressly or impliedly warranted to Petitioner and other end users of their benzene-containing products, who were similarly situated, that the benzene-containing products, manufactured, produced, processed, compounded, converted, sold, supplied, distributed or otherwise placed in the stream of commerce by them, to Petitioner's employer, were reasonably fit and safe for their intended purpose and application.

### 33.

The defendants, individually, jointly and severally, breached said warranties to Petitioner, in that the benzene-containing products, manufactured, produced, processed, compounded, converted, sold, marketed, supplied, distributed and/or otherwise placed in the stream of commerce by them

14

were inherently defective, ultra hazardous, dangerous, unfit for use, not properly merchantable and not safe, as marketed, for their foreseeable use and purpose.

## 34.

As the direct and proximate result of the aforesaid negligence, failures and omissions, of the defendants, individually, jointly and severally, Petitioner was caused to contract and suffer AML and other serious harm and injury to his body, including the various systems, organs and tissues therein, causing him extreme pain, suffering, mental anguish and humiliation.

## 35.

As the direct and proximate result of the aforesaid negligence, failures and omissions, of the defendants, individually, jointly and severally, Petitioner was obliged to spend large sums of money to care for and treat his disease and injuries.

## 36.

As the direct and proximate result of the aforesaid negligence, failures and omissions, of the defendants, individually, jointly and severally, Petitioner was caused to suffer through numerous extremely painful procedures, including chemotherapy, bone marrow replacement, stem cell procedures in an effort to treat his disease and prolong his life.

## COUNT III - LOUISIANA PRODUCTS LIABILITY ACT

## 37.

Petitioner hereby adopts and incorporates by reference each and every statement and allegation contained in Paragraphs 1 through 34 herein, as if each of said paragraphs were set forth herein with particularity.

## 38.

Petitioner was exposed to benzene-containing products manufactured, processed, formulated, distributed and sold by the Defendants, which individually and collectively knew or should and/or could have reasonably known that their benzene-containing products, in their ordinary and foreseeable use, would be sold and reach the public, including persons such as Petitioner and Petitioner's employer and be used in connection with the cleaning of automobile and mechanical parts, such as those which were the business of Petitioner's employer, and would be used in connection with the routine activities of Petitioner, as an end user of such benzene-containing products.

15

**39.**

Defendants' benzene-containing products were defective and the defective condition rendering said products unreasonably dangerous, and said products were in this defective condition at the time they left the possession, custody and control of the defendants. The defective and unreasonably dangerous nature of said products directly and proximately caused the injuries and damages of the Petitioner and Petitioner, for which the defendants are strictly liable.

**40.**

Defendants' benzene-containing products were unreasonably dangerous in their construction and composition, including that they contained benzene, a known cancer and leukemia-causing agent.

**41.**

Defendants' benzene-containing products were unreasonably dangerous and defective in their design in that they contained benzene, a known cancer and leukemia causing agent which serves no utility and/or any utility it might have is far outweighed by the risks presented, a safer alternative designs existed and the likelihood and gravity of damage caused by the benzene-containing products outweighed the burden, if any, upon the manufacturer in adopting such safer alternative designs.

**42.**

Defendants' benzene-containing products were unreasonably dangerous in that the defendants failed to exercise reasonable care to convey adequate and necessary warnings of the carcinogenic and leukemogenic dangers of the products to make them safe.

**43.**

These benzene-containing products were defective, in that they were not capable, as sold, of being made safe for their ordinary and intended use and purpose, in that defendants failed to give any warnings, notices or instructions, or give proper and adequate warnings, notices or instructions, about the known or potential risks, dangers and harm or the specific nature and extent of same, inherent to these benzene-containing products and affirmatively misrepresented to Petitioner, and others similarly situated, that their benzene-containing products were safe in their ordinary and foreseeable use, which material misrepresentation induced Petitioner to expose himself to these hazards and dangers without taking proper safeguards and precautions to protect himself;

**44.**

These benzene-containing products were also defective, in that they were not capable, as sold, of being made safe for their ordinary and intended use and purpose, in that defendants failed to give any warnings, instructions or notices, or adequate or sufficient warnings or instructions, about the reasonably safe and sufficient safeguards, wearing apparel, safety equipment and applications necessary to protect Petitioner, and others similarly situated, from being injured, poisoned, disabled, killed or otherwise harmed by working with, coming into direct and indirect contact with, handling, inhaling, ingesting and otherwise being exposed to benzene-containing products and/or vapors therefrom, and affirmatively misrepresented to Petitioner, and others similarly situated, that their benzene-containing products were safe, in their ordinary and foreseeable use, which material misrepresentation induced Petitioner to expose himself to these hazards and dangers without proper precautions, safeguards and/or protections.

**45.**

These benzene-containing products were also defective, in that they were not capable, as sold, of being made safe for their ordinary and intended use and purpose, in that defendants failed and omitted to publish, adopt and enforce a safety plan and a safe method of handling and working with their benzene-containing products;

**46.**

These benzene-containing products were also defective, in that they were not capable, as sold, of being made safe for their ordinary and intended use and purpose, in that defendants failed and omitted to recommended methods to improve the work environment;

**47.**

These benzene-containing products were also defective, in that they were not capable, as sold, of being made safe for their ordinary and intended use and purpose, in that defendants failed to develop, utilize and promote existing, safer alternative products;

**48.**

These benzene-containing products were also defective, in that they were not capable, as sold, of being made safe for their ordinary and intended use and purpose, in that defendants failed to test their benzene-containing products, under conditions similar to those under which Petitioner worked, to assure such products were not harmful to health.

**49.**

The defendants are in the business of selling benzene-containing products, and these benzene-containing products reached the Petitioner, his employers and coworkers without substantial change in the condition in which they were sold or distributed by the defendants.

**50.**

Defendants knew that their benzene-containing products would be used without inspection for defects and, by placing them on the market, represented that they would safely do the job for which they were intended, which must necessarily include safe handling and use of said products.

**51.**

Petitioner, his coworkers and employers were unaware of the hazards and defects of the defendants' benzene-containing products, which made them unsafe for handling, working with or in proximity to by the Petitioner and other similarly situated workers.

**52.**

Defendants' benzene-containing products were unreasonably dangerous per se because they contained benzene, a known cancer and leukemia-causing agent.

**53.**

Defendants' benzene-containing products were unreasonably dangerous because they failed to conform to express warranties made by the defendants relating to the safe nature and use thereof.

**54.**

During the period that the Petitioner was being exposed to the defendants' benzene-containing products, said products were being used in a manner that was intended, foreseeable and reasonably anticipated by the defendants.

**55.**

As the direct and proximate result of the aforesaid, Petitioner was caused to contract and suffer CML and other serious harm and injury to his body, including the various systems, organs and tissues therein, causing him pain, suffering, mental anguish and humiliation.

**56.**

As the direct and proximate result of the aforesaid, Petitioner was obliged to spend large sums of money to care for and treat his disease and injuries.

57.

As the direct and proximate result of the aforesaid, Petitioner was caused to suffer through numerous extremely painful procedures, including chemotherapy, bone marrow replacement, and stem cell procedures in an effort to treat his disease and prolong his life.

58.

The conduct of the defendants, as described above, was willful, wanton, knowing, purposeful and intentional misconduct and the acts of defendants, jointly and severally as hereinbefore described, was so outrageous and was of such degree and magnitude that it rose to the level of conduct exhibiting a reckless indifference to the health, safety, rights and welfare of Petitioner.

59.

The flagrant misrepresentations and other misconduct described above, regarding the known or potential health hazards associated with these benzene-containing products were made directly to Petitioner and caused Petitioner to aggravate his condition and situation, in that they prevented him from avoiding further exposure to these chemical products, seek medical opinions regarding the true state of his medical condition, take proper precautions to minimize or eliminate any risk from such exposure or change the nature of his job description of areas of work, so he would have no contact with such products.

60.

The conduct of defendants, jointly and severally as described above was willful, wanton, knowing, purposeful and intentional, as were their failures and/or omissions, as it related to Petitioner, and were of such degree and magnitude that they rose to the level of conduct exhibiting a reckless indifference to the health, safety, rights and welfare of Petitioner.

61.

As the direct and proximate result of the aforesaid willful, wanton, knowing, purposeful and intentional conduct, failures and/or omissions of defendants, jointly and severally as described above, which was outrageous and rose to the level of conduct exhibiting a reckless indifference to health, safety, rights and welfare of Petitioner, Petitioner was caused to contract and suffer CML and other serious harm and injury to his body, including the various systems, organs and tissues therein, causing him extreme pain suffering, mental anguish, and humiliation.

62.

As the direct and proximate result of the aforesaid willful, wanton, knowing, purposeful and intentional conduct, failures and/or omissions of defendants, jointly and severally as described above, which was outrageous and rose to the level of conduct exhibiting a reckless indifference to the health, safety, rights and welfare of Petitioner, Petitioner was obliged to spend large sums of money to care for and treat his disease and injuries.

63.

As the direct and proximate result of the aforesaid willful, wanton, knowing, purposeful and intentional conduct, failures and/or omissions of defendants, jointly and severally as described above, which was outrageous and rose to the level of conduct exhibiting a reckless indifference to the health, safety, rights and welfare of Petitioner, Petitioner was caused to suffer through numerous extremely painful procedures, including chemotherapy, bone marrow replacement, and stem cell procedures in an effort to treat his disease and prolong his life.

**SOLO MARINE, INC. and BLACK TOWING, INC.**

**COUNT V**

**JONES ACT**

64.

Venue is proper in this Court as the injuries occurred within the navigable waters of Louisiana within this District. Mr. Merritt regularly sailed out of Orleans, Jefferson, and St. Mary parishes. This is an admiralty and maritime claim brought in accordance with the saving-to-suitors clause, 28 U.S.C. § 1331(1).

65.

The vessels on which Petitioner labored were used as tug boats to haul and transport other vessels and barges, many of which were based out of Orleans, Jefferson and St. Mary Parish, Louisiana area. Mr. Merritt contributed to the vessels' work by assisting in the general maintenance, refurbishment, repair, operation and performance of the vessels as well as other duties assigned him as a deck hand. Mr. Merritt worked for the defendant on various vessels in areas including, but not limited to the Mississippi River and the Gulf of Mexico from 1977 through 1981.

66.

This maritime proceeding is brought to recover all pecuniary/special and non-pecuniary/general damages for the personal injuries of Petitioners, as this Honorable Court

20

will determine to be lawful, necessary reasonable, fair or just which would properly and adequately compensate complainant for all damages allowable under law.

**67.**

Mr. Merritt was exposed to petroleum gases, gasoline, diesel fuel and benzene in the course of his work for the Defendants during the periods alleged above.

**68.**

None of the Defendants warned Mr. Merritt he was being exposed to benzene, nor did they inform him of the health hazards resulting from benzene exposure.

**69.**

None of the Defendants provided respiratory protection, chemical gloves or chemical suits to protect from exposure to benzene and benzene-containing products.

**70.**

## UNSEAWORTHINESS AND NEGLIGENCE

1.      At all times material hereto, the defendants were Jones Act employers of Mr. Merritt at the times of the exposures in question and owed a duty to Mr. Merritt. The Jones Act Defendants violated its non-delegable duty to Mr. Merritt to provide him with a seaworthy vessel upon which to work.

In the course of his work, Mr. Merritt was exposed to benzene and benzene-containing chemicals and solvents aboard vessels which at all material times were owned and/or operated and/or supervised by the Jones Act Defendants (**SOLO MARINE, INC. and BLACK TOWING, INC.**)

2.      The defendant owed a duty and breached its respective duty owed to Mr. Merritt creating conditions of unseaworthiness and/or negligence consisting of, but not limited to, the following:

   a.   Failure to have the necessary equipment or personal to perform the required work;

   b.   Failure to have equipment aboard the vessel in working condition;

   c.   Failure to have properly trained and competent master and crew;

   d.   Permitting the vessel to be saturated and/or enveloped with benzene contaminated air, when the defendant knew or should have known of the same and of injurious consequences of the same;

   e.   Failure to properly secure their respective vessels and provide a safe workplace;

21

f.  Failure to properly inspect and/or maintain the defendants' vessels to ensure that benzene contaminated air would be contained and would not saturate and/or envelope the vessel causing illness and/or injury to crewmembers and maritime workers such as Mr. Merritt;

g.  Failing to warn Mr. Merritt of the unsafe conditions and health risks associated with the exposure to benzene contaminated air aboard the defendants' vessels and work areas;

h.  Failing to make proper and adequate precautions on the defendant's vessels so as to prevent the ongoing release of benzene into the crew spaces and work areas;

i.  Failing to provide the master, crew, other workers, and Mr. Merritt with the adequate equipment and training to control and/or minimize exposure to benzene;

j.  Failing to reduce, minimize, or eliminate benzene exposure levels;

k.  Failing to comply with applicable regulations and law concerning air quality and environmental standards aboard the respective vessels, and failing to conform to standard practices in the industry with regard to the same;

l.  Failing to conduct adequate industrial hygiene monitoring of workers such as Mr. Merritt;

m.  Failing to conduct adequate engineering controls to protect workers such as Mr. Merritt from over-exposure to toxic substances;

n.  Failing to implement medical monitoring and testing of employees such as Mr. Merritt to determine their exposures and/or overexposures to toxic substances;

o.  Failing to implement adequate air monitoring to protect and/or warn workers and Mr. Merritt of exposure and/or overexposures to hazardous and toxic substances;

p.  Failing to design and/or implement adequate administrative controls to prevent over-exposure to toxic substances by Mr. Merritt, employees, and/or workers;

q.  Failing to provide proper personal protective equipment, "PPE," so as to minimize benzene exposure and prevent harm to Mr. Merritt and others on the vessels in the course and scope of employment;

r.  Failing to adequately supervise Mr. Merritt;

s.  Failing to adequately train Mr. Merritt, crew, and other workers in appropriate methods to minimize exposure to hazardous substances including benzene;

22

t.   Failing to properly ship, inspect, accept, remove, load, clean, train its employees, and generally transport hazardous materials in interstate commerce, in violation of 49 C.F.R. Transportation Regulation Parts 100-185;

u.   Any and all other acts of unseaworthiness, which may be proven at trial.

3.   Mr. Merritt's injuries were caused by the negligence of the Jones Act Defendants and the unseaworthiness of the defendants' vessels upon which Mr. Merritt worked at the aforementioned times, for which plaintiff seeks damages pled herein.

## MAINTENANCE AND CURE

4.   Plaintiffs re-allege each allegation hereinabove. At all times pertinent to this action, Mr. Merritt was and is entitled to the benefits of maintenance and cure from the defendants, his Jones Act employers, and in the event such is not timely and properly paid, now or in the future, to receive damages in the form of attorney's fees and costs from the Jones Act Defendants for any wrongful failure to timely and/or pay maintenance and cure and legal interest thereon.

71.

## COUNT VI
## NEGLIGENCE

1.   Defendants' were negligent in the following illustrative, but not exclusive, particulars:

a.   failing to warn of the health hazards associated with exposure to benzene;

b.   failing to implement adequate engineering controls to eliminate or substantially reduce exposure to benzene;

c.   failing to use benzene-free products;

d.   failure to totally isolate any work activity involving exposure to benzene.

2.   The refinery defendants are strictly liable for Mr. Merritt's exposure to benzene because the products that released benzene were in their care and custody. The benzene-containing products located on the structures or units of the facilities were defective or were in a condition to create an unreasonable risk of harm and Mr. Merritt's CML was caused by the defective condition.

3.   The Defendants are liable to petitioners in the following, non-exclusive, particulars:

a. Negligent or intentional failure to know of, discover, recognize and/or act upon the knowledge or the risks associated with exposure to benzene-containing products.

b. Negligent or intentional failure to institute appropriate safety procedures and practices and other relevant industrial hygiene standards in order to eliminate or reduce exposure to benzene-containing products, such measures and procedures to include, but are not limited to:

    i. use of engineering methods, and installation of proper ventilation to control or reduce benzene exposure;

    ii. wetting down asbestos-containing products to reduce dust levels;

    iii. isolation of employees engaged in activities involving the use of benzene-containing products;

    iv. posting of signs or placards, or issuing other appropriate warnings around areas where benzene was released;

    v. requiring and providing special clothing to workers on their premises handling and/or coming into contact with benzene-containing products.

72.

**Premise Negligence**

1. The Premise Defendants are liable to Petitioner for the damages caused by their negligence pursuant to La. C.C. 2315, which provides: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

2. Not only did the premise defendants have a duty to act with reasonable care to avoid injury to another.

3. The premise defendant owners during the time periods identified above, and therefore had a duty to provide a safe workplace during these periods of employment.

4. The premise defendants knew or should have known through industry and medical studies, the existence of which were unknown to the Plaintiffs, of the health hazards inherent in benzene and benzene-containing products.

5. In the course of his work at the premise defendants' facilities, Mr. Merritt was exposed to benzene at all material times, which were owned and/or operated and/or supervised by the premise defendants. The defendants owed a duty and breached their respective duties owed to Mr. Merritt creating conditions of an unsafe workplace and/or negligence consisting of, but not limited to, the following:

a. failing to warn it's employees or contract workers regarding the health hazards associated with exposure to benzene;

24

b.  failing to advise employees and contract employees that benzene was an extremely dangerous substance which, even in small quantities, could cause cancer;

c.  failing to implement adequate engineering controls to eliminate or substantially reduce their employees' and contract workers exposure to benzene;

d.  failing to use benzene-free products;

e.  failure to provide inspection, approval and supervision of the work of Mr. Merritt, his co-employees and other contract workers; to see that proper safety rules were adopted, promulgated and enforced concerning the use of respiratory protection devices;

f.  failing to see that Mr. Merritt, his co-employees, and other contractor workers performed the duties pertaining to their work in a proper, safe and workmanlike manner;

g.  failing to see that Merritt, his co-employees, and other contract workers used safe and sound principals and practices in their work; to make health and hygiene decisions on any and all questions regarding the use of respiratory protection devices;

h.  failing to keep abreast of state of the art knowledge as it pertains to the dangers of benzene inhalation; provide adequate warnings, including placards and signs, physical examinations, safety equipment, ventilation, and breathing apparatus, where such was necessary in order to prevent Mr. Merritt from being harmed by exposure to benzene in the environment which he was required to work;

i.  failing to make certain that employees and contract workers, including Mr. Merritt, were provided a safe working environment free from benzene exposure;

j.  negligently or intentionally failing to comply with the applicable safety regulations;

k.  failing to provide Mr. Merritt with a safe place to work;

l.  failing to conduct adequate industrial hygiene monitoring of workers such as Mr. Merritt;

m.  failing to provide adequate safety equipment;

n.  failing to protect Mr. Merritt from any benzene exposure;

o.  failing to provide Mr. Merritt sufficient personal protective  equipment, safety devices and work procedures intended to prevent or substantially eliminate the effects of asbestos exposure;

p.  failing to supervise or insure compliance with safety guidelines concerning exposure to benzene or benzene-containing products;

q.  failing to use or misusing equipment and instrumentalities within their control which were intended to minimize Mr. Merritt's exposure to benzene;

r.  failing to properly perform safety inspections of Mr. Merritt's workplace;

s.  failing to properly perform engineering services, consulting and direction of work involving new construction maintenance at Mr. Merritt's work sites;

t.  failing to comply with applicable State and Federal regulations regarding workplace exposure to benzene;

u.  failing to disclose, warn or reveal medical and safety information to Mr. Merritt regarding the hazards of benzene; and

v.  Any and all other acts of negligence or other acts of fault, which may be proven at trial.

The defendant's substandard conduct, described above, caused Mr. Merritt's exposure to benzene and was each a substantial factor contributing to Petitioners' injuries.

### 73.

### Premise Liability

The Premise Defendants have been either the operator and/or the manager and/or the owner and occupier of its respective facility and in custody of the facilities during the relevant time period. The facility was defective in that the benzene and benzene-containing materials in the facility created an unreasonable risk of harm to Mr. Merritt and other persons on the premises. Mr. Merritt was exposed to benzene and benzene-containing materials while he was an invitee at the premise Defendants' facility. The defective condition of the facility was a proximate cause of Mr. Merritt's benzene related injuries and damages.

1.      Premise Defendants are liable to Mr. Merritt for their failure to exercise reasonable care to protect Mr. Merritt from the foreseeable dangers associated with exposure to benzene. The Defendants, as the premises operator and/or manager and/or owner and occupier, and/or custodian, had a non- delegable duty to keep the premises safe for invites. The Defendants knew or should have known of the unreasonable risk of harm inherent in exposure to benzene and benzene-containing materials but failed to protect Mr. Merritt from said risk or harm. The Defendants' failure to protect Mr. Merritt from known and/or foreseeable dangers constitutes negligence. Said negligence was a proximate cause of Merritt's benzene related injuries and damages.

### 74.

### Strict Liability

The Premise is strictly liable for Mr. Merritt's exposure to benzene because the products that released benzene were in their care and custody. The benzene-containing products located on the structures or units of the premise defendants' facilities were defective or were in a condition to create an unreasonable risk of harm and Mr. Merritt's CML was caused by the defective condition.

1.      Additionally, as owners and operators of the facilities where Mr. Merritt worked, the premise defendants are strictly liable for the Petitioners damages arising from the custody or guard of these facilities.  Pursuant to La. Civil Code Art. 2317:

> Art. 2317. Acts of others and of things in custody.
> We are responsible, not only for the damage occasioned by
> our own act, but for that which is caused by the act of persons for

whom we are answerable, or of the things which we have in our custody...."

2.     Pursuant to La. Civil Code Art. 2317.1, the Louisiana premise defendants are liable for Mr. Merritt's injuries. Petitioner's injuries were caused a vice or defective thing; namely, the benzene-containing products in the facilities that were under their ownership, care, custody, supervision, and control (as described above).

75.

## TURNER INDUSTRIES GROUP, LLC, BARRIERE CONSTRUCTION CO., LLC

## AND WOODWARD DESIGN + BUILD, LLC

Turner, Barriere and Woodward were negligent in the construction, and design of construction jobs and turnaround work performed at the refineries. Turner, Barriere and Woodward have been either the contractor or subcontractor of construction work performed at the respective facilities and in custody and control of the work performed at the facilities during the relevant time period. The construction was defective in that the benzene and benzene-containing materials in the facility created an unreasonable risk of harm to Mr. Merritt and other persons on the premises. Mr. Merritt was exposed to benzene and benzene-containing materials while he was an invitee at the premise Defendants' facility. The defective condition of the facility was a proximate cause of Mr. Merritt's benzene related injuries and damages. Turner, Barriere and Woodward knew or should have known of the unreasonable risk of harm inherent in exposure to benzene and benzene-containing materials but failed to protect Mr. Merritt from said risk or harm. The Defendants' failure to protect Mr. Merritt from known and/or foreseeable dangers constitutes negligence. Said negligence was a proximate cause of Merritt's benzene related injuries and damages.

76.

## TURNER INDUSTRIES GROUP, LLC, BARRIERE CONSTRUCTION CO., LLC

## AND WOODWARD DESIGN + BUILD, LLC

### Strict Liability

Turner, Barriere and Woodward are strictly liable for Mr. Merritt's exposure to benzene because the construction jobs they worked on released benzene and were in their care and custody. The benzene-containing products located on the structures or units of the construction jobs of the premise defendants' facilities were defective or were in a condition to create an unreasonable risk of harm and Mr. Merritt's CML was caused by the defective condition.

Additionally, as construction contractors of the facilities where Mr. Merritt worked, the premise defendants are strictly liable for the Petitioners damages arising from the custody or guard of the construction jobs at these facilities.  Pursuant to La. Civil Code Art. 2317:

> Art. 2317. Acts of others and of things in custody.
> We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody...."

Pursuant to La. Civil Code Art. 2317.1, the Louisiana Turner, Barriere and Woodward are liable for Mr. Merritt's injuries. Petitioner's injuries were caused a vice or defective thing; namely, the benzene-containing products in the construction at the facilities that were under the care, custody, supervision, and control (as described above).

## COUNT VII -
## LOSS OF CONSORTIUM

### 77.

Petitioners, in their own right, hereby adopt and incorporate by reference each and every statement and allegation contained in Paragraphs 1 through 74 herein, as if each of said paragraphs were set forth herein with particularity.

### 78.

As the direct and proximate result of the negligence, breach of warranty, intentional tort and failures of defendants chemical products, through strict liability, or those chemical products of defendants which were distributed and supplied by other business entities to Petitioner's employer, Petitioner was caused to contract and suffer disease and injury, including CML, to his body, including the systems, organs and tissues therein, causing him extreme physical pain, suffering, mental anguish, and humiliation.

### 79.

As the direct and proximate result of the aforesaid, and because of the injuries to Petitioner, Sandra Merritt, in their own right, has and will continue to be deprived of the care, comfort, society, love, affection, companionship, guidance, friendship, support and parental relationship of Petitioner, Amon Merritt.

### 80.

Petitioner brings this action individually as the spouse of Amon Merritt.

28

**81.**

The plaintiff is entitled to damages for the following:

    **a.** Past, present, and future physical and mental pain and suffering and emotional distress from his CML Leukemia;

    **b.** Fear of dying which he endured from the time of his diagnosis;

    **c.** Loss of enjoyment of life;

    **d.** Past, present and future medical expenses;

    **e.** Other miscellaneous expenses incurred as a result of his CML Leukemia;

    **f.** Lost wages;

    **g.** Disfigurement and embarrassment;

    **h.** Physical impairment;

    **i.** Past and future earnings;

    **j.** Lost earning capacity;

    **k.** Physical and mental disabilities;

    **l.** Past, present, and future medical care, convalescence, mental and physical therapy and all other health care expenses;

    **m.** Any and all other damages to be proven at trial.

**WHEREFORE,** the plaintiffs prays that the defendants named herein be duly cited to appear and answer this petition and that, after due proceedings are had, there be judgment rendered herein in their favor and against the defendants, **TEXACO INC.; STAR ENTERPRISES; MOTIVA ENTERPRISES, LLC; SAUDI REFINING, INC; TURNER INDUSTRIES GROUP, LLC RADIATOR SPECIALTY COMPANY; UNITED STATES STEEL CORPORATION; BERRYMAN PRODUCTS, INC.; SHELL OIL COMPANY; MURPHY OIL COMPANY; GENUINE PARTS COMPANY; SAFETY-KLEEN SYSTEMS, INC.; ASHLAND INC.; UNIVAR USA, INC. f/k/a CHEMCENTRAL; UNION OIL COMPANY OF CALIFORNIA d/b/a UNOCAL; CHEVRON USA INC.; CRC INDUSTRIES, INC.; HUNT OIL COMPANY; HUNT REFINING COMPANY; EXXONMOBIL CORPORATION; SOLO MARINE INC.; BLACK TOWING, INC., 3M COMPANY, BARRIERE CONSTRUCTION CO., L.L.C. and WOODWARD DESIGN + BUILD, LLC** jointly, severally and in solido for an amount reasonable under the premise herein, for all costs of these proceedings, for a trial by jury on all issues, and for all general and equitable relief to which they may be entitled.

Respectfully submitted,

**WILLIAMS LAW OFFICE, LLC**

L. Eric Williams, Jr. (#26773)
433 Metairie Road, Suite 401
Metairie, Louisiana 70005
Telephone: (504) 832-9898
Facsimile:(504) 832-9811
Email: eric@amlbenzene.net

**PLEASE SERVE:**

**SHELL OIL COMPANY**
Through it's registered agent for service of process:
C T Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808

**EXXONMOBIL CORPORATION**
Through it's registered agent for service of process:
320 Somerulos St.
Baton Rouge, LA 70802

**MURPHY OIL USA, INC.**
Through it's registered agent for service of process:
C T Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808

**TEXACO INC.**
Through it's registered agent for service of process:
The Prentice-Hall Corporation Systems, Inc.
320 Somerulos St.
Baton Rouge, Louisiana 70802

**STAR ENTERPRISES, INC.**
Through the Louisiana Long Arm Statute:
The Company Corporation
2711 Centerville Road Ste. 400
Wilmington, DE 19808

**MOTIVA ENTERPRISES, LLC**
Through it's registered agent for service of process:
C T Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808

**SAUDI REFINING, INC.**
Through it's registered agent for service of process:
C T Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808

**RADIATOR SPECIALTY COMPANY**
Through the Louisiana Long Arm Statute:
600 Radiator Road
Indian Trail, NC 28079

30

**UNITED STATES STEEL CORPORATION**
Through it's registered agent for service of process:
National Registered Agents, Inc.
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808

**BERRYMAN PRODUCTS, INC.**
Through the Louisiana Long Arm Statute:
3800 E. Randolph Mill Road
Arlington, TX 76011

**GENUINE PARTS COMPANY**
Through the Louisiana Long Arm Statute:
CT Corporation System
116 Pine Street, Suite 320
Harrisburg, PA 17101

**SAFETY-KLEEN SYSTEMS, INC.**
Through it's registered agent for service of process:
C T Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808

**ASHLAND INC.**
Through it's registered agent for service of process:
C T Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, Louisiana 70808

**UNIVAR USA, INC. f/k/a CHEMCENTRAL**
Through it's registered agent for service of process:
Corporation Service Company
320 Somerulos St.
Baton Rouge, Louisiana 70802

**UNION OIL COMPANY OF CALIFORNIA d/b/a UNOCAL**
Through it's registered agent for service of process:
Corporation Service Company
320 Somerulos St.
Baton Rouge, Louisiana 70802

**CHEVRON USA INC. as successor in interest to Gulf Oil Corporation**
Through it's registered agent for service of process:
The Prentice-Hall Corporation Systems, Inc.
320 Somerulos St.
Baton Rouge, Louisiana 70802

**CRC INDUSTRIES, INC.**
Through the Louisiana Long Arm Statute:
885 Louis Drive
Warminster, PA 18974

**HUNT OIL COMPANY**
Through it's registered agent for service of process:
C T Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808

31

**HUNT REFINING COMPANY**
Through it's registered agent for service of process:
C T Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808

**SOLO MARINE INC.**
Through it's registered agent for service of process:
Andy C. Wedaman
1304 McDermott Drive
Morgan City, LA 70380

**BLACK TOWING, INC.,**
Through it's registered agent for service of process:
Andy C. Wedaman
1304 McDermott Drive
Morgan City, LA 70380

**TURNER INDUSTRIES GROUP, LLC**
Through it's registered agent for service of process:
John H. Fenner, III
8687 United Plaza Blvd.
Baton Rouge, LA 70809

**3M COMPANY**
Through it's registered agent for service of process:
C T Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808

**WOODWARD DESIGN + BUILD, LLC**
Through it's registered agent for service of process:
Paul H. Flower
1000 S. Jefferson Davis Parkway
New Orleans, LA 70125

**BARRIERE CONSTRUCTION CO., LLC**
Through it's registered agent for service of process:
Corporation Service Company
320 Somerulos St.
Baton Rouge, Louisiana 70802