| | |
|---|---|
| **AMON MERRITT, et al.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 17-10636** |
| **TEXACO INC., et al.** | **SECTION: "G"(5)** |

## ORDER AND REASONS

Before the Court is Plaintiff Amon Merritt's ("Plaintiff") "Motion to Remand."[1] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant the motion and remand this matter to the Civil District Court for the Parish of Orleans, State of Louisiana.

## I. Background

Plaintiff filed this lawsuit on November 3, 2015, in the Civil District Court for the Parish of Orleans, State of Louisiana, on behalf of himself and his wife, Sandra Merritt.[2] In the petition, Plaintiff alleges that he came into direct and indirect contact with "benzene-containing products and/or the vapors from such products, which were manufactured, produced, processed, compounded, converted, sold, marketed, distributed, supplied and/or otherwise placed into the stream of commerce by Defendants."[3] Specifically, Plaintiff alleges that he was employed as a mechanic for various employers from 1967 to 1991, a gasoline station attendant from 1989 to

---

[1] Rec. Doc. 9. Plaintiff's wife, Sandra Merritt, is also named as a plaintiff in this suit. However, the motion to remand was filed by only Plaintiff Amon Merritt. *Id.*

[2] Rec. Doc. 1-1 at 1.

[3] *Id.*

1991, and boilermaker from 1981 to 2001 where he was exposed to benzene-containing products.[4] Plaintiff alleges that he was diagnosed with chronic myeloid leukemia ("CML") on July 1, 2014, which Plaintiff alleges was caused by benzene exposure.[5]

In the petition, Plaintiff names the following companies as defendants in the suit: Texaco, Inc. ("Texaco"), Star Enterprises ("Star"), Motiva Enterprises, LLC ("Motiva"), Saudi Refining, Inc. ("Saudi"), Turner Industries Group, LLC ("Turner"), Radiator Specialty Company ("Radiator"), United States Steel Corporation ("US Steel"), Berryman Products, Inc. ("Berryman"), Shell Oil Company ("Shell"), Murphy Oil Corporation ("Murphy"), Genuine Parts Company ("Genuine Parts"), Safety-Kleen Systems, Inc. ("Safety-Kleen"), Ashland, Inc. ("Ashland"), Univar USA, Inc. f/k/a Chemcentral ("Univar"), Union Oil Company of California d/b/a Unocal ("Unocal"), Chevron USA, Inc. ("Chevron"), CRC Industries, Inc. ("CRC"), Hunt Oil Company ("Hunt Oil"), Hunt Refining Company ("Hunt Refining"), ExxonMobil Corporation ("Exxon"), Solo Marine, Inc. ("Solo"), Black Towing, Inc. ("Black Towing"), 3M Company ("3M"), Barriere Construction Co., LLC f/k/a Barrier Construction Co., Inc. ("Barriere"), and Woodward Design + Build, LLC f/k/a Carl E. Woodward, Inc. ("Woodward").[6]

On October 13, 2017, Texaco, Chevron, CRC, Star, Unocal, and US Steel (collectively, Removing Defendants") removed the case to this Court, alleging complete diversity of citizenship and an amount in controversy exceeding $75,000.[7] In the Notice of Removal, Removing

---

[4] *Id.* at 9–10.

[5] *Id.* at 10.

[6] *Id.* at 1–8.

[7] Rec. Doc. 1.

Defendants assert that Plaintiffs are citizens of Mississippi and none of the defendants in this matter are citizens of Mississippi.[8] Removing Defendants assert that this action was not initially removable due to the presence of five forum defendants in the suit: Solo, Black Towing, Barriere, Woodward, and Turner.[9] However, Removing Defendants assert that proper service was never made on Solo or Black Towing, and Plaintiffs voluntarily Dismissed Barrier and Woodward from the suit.[10] Furthermore, Removing Defendants contend that the citizenship of Turner, the only remaining forum defendant, should be disregarded because Turner was improperly joined as a defendant in this action.[11]

On November 3, 2017, Plaintiff filed the instant motion to remand.[12] On November 28, 2017, Removing Defendants filed an opposition to the motion to remand.[13] On December 1, 2017, with leave of Court, Plaintiff filed a reply brief in further support of the motion to remand.[14]

## II. Parties' Arguments

### A.    Plaintiff's Arguments in Support of Motion to Remand

In the motion, Plaintiff first asserts that the case should be remanded because removal was not timely.[15] Plaintiff notes that the case was removed more than one year after it was filed in state

---

[8] *Id.* at 3.

[9] *Id.*

[10] *Id.* at 3–4.

[11] *Id.* at 5.

[12] Rec. Doc. 9.

[13] Rec. Doc. 13.

[14] Rec. Doc. 17.

[15] Rec. Doc. 9-1 at 2.

court.[16] Plaintiff also notes that his deposition was taken on July 11, 2017, September 12, 2017, and September 13, 2017, but Removing Defendants waited until October 13, 2017, to remove the case.[17] Therefore, Plaintiff argues that the case was not timely removed.[18]

Second, Plaintiff asserts that the case was not properly removed because Turner is properly joined as a defendant in this case.[19] Plaintiff argues that the detailed allegations in the petition would easily defeat a Rule 12(b)(6) motion to dismiss because the petition alleges that "each of the Defendants knew or should have known through industry and medical studies that there were health hazards inherent in the benzene products they were manufacturing or working around."[20] Plaintiff contends that "Defendants are strictly liable for Plaintiff's benzene related injuries because the benzene-containing products that they manufactured, sold, supplied, worked around and/or used were unreasonably dangerous per se, unreasonably dangerous as designed, and unreasonably dangerous for failure to include a warning about the dangers of benzene exposure."[21] Plaintiff notes that he also alleges that Defendants were negligent "based on a series of substandard conduct, including failing to warn, failing to inspect or test the products, failing to use suitable substitutes, etc."[22] Therefore, Plaintiff contends that "[t]here can be no serious question that Plaintiff has adequately alleged Louisiana strict liability and negligence claims against Turner for

---

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.* at 4.

[20] *Id.*

[21] *Id.* at 4–5.

[22] *Id.* at 5.

construction work that exposed Mr. Merritt to benzene containing products."[23] Accordingly, Plaintiff contends that the Court need not go beyond the factual allegations contained in the petition to determine that Turner is properly joined.[24]

Furthermore, Plaintiff argues that Removing Defendants cannot show improper joinder by merely alleging that Plaintiff lacks evidence at this stage of the litigation.[25] Plaintiff contends that Removing Defendants erroneously take the position that Plaintiff's "deposition testimony conclusively establishes that he cannot recover against Turner regarding his work around Turner employees at different refineries."[26] Plaintiff cites two district court cases where courts remanded a case that was removed solely on the basis that the plaintiff stated in his deposition that he could not identify whether the non-diverse defendant had supplied asbestos-containing products.[27] Plaintiff contends that this case should have the same result because Removing Defendants have not offered any evidence that would negate the possibility of Turner's liability, and Plaintiff's deposition testimony shows that he was exposed to benzene while working around employees of Turner.[28]

Moreover, Plaintiff argues that the evidence against Turner demonstrates the existence of material issues of fact in dispute for the jury's consideration at trial.[29] Plaintiff asserts that at trial,

---

[23] *Id.*

[24] *Id.*

[25] *Id.* at 5–6 (citing *Travis v. Irby*, 326 F.3d 644, 650 (5th Cir. 2003)).

[26] *Id.* at 7.

[27] *Id.* at 7–8 (citing *Bradford v. McCarty Corp.*, No. 08-746, 2009 WL 667175 (M.D. La. Mar. 12, 2009); *Richoux v. CSR Ltd.*, No. 08-931, 2008 WL 576242 (E.D. La. Feb. 29, 2008)).

[28] *Id.* at 9.

[29] *Id.*

he will be able to demonstrate the benzene exposures that Turner caused Plaintiff to encounter.[30] Plaintiff cites *Davidson v. Georgia Pacific, LLC*, where the Fifth Circuit reversed a district court's determination that a forum defendant was improperly joined, reasoning that the plaintiff's deposition testimony that it was "very possible" that he had been exposed to asbestos was sufficient to prove that the plaintiff had some possibility of recovery against the defendant.[31] Similarly, Plaintiff contends that his deposition testimony shows that he has a possibility of recovering against Turner.[32]

Specifically, Plaintiff notes that he identified the Gulf Alliance Refinery and the Texaco Donaldsonville Refinery as locations where he was exposed to benzene,[33] and that he recalled seeing Turner at both of those refineries.[34] Moreover, Plaintiff notes that Removing Defendants never asked him "what the Turner employees were doing in his vicinities, whether they were involved in opening the lines and units which released the benzene containing process streams he was exposed to, or whether they otherwise caused his exposures to benzene containing process streams."[35] However, Plaintiff points to his affidavit, where he attests that at the Alliance Refinery, he saw "Turner Industry workers opened up and performed work on the vessels, equipment and pipes that were connected to the pipes, vessels and equipment that [he] was working upon and product that [he] was exposed to remained in those pipes, vessels, and equipment when [he] opened

---

[30] *Id.* at 10.

[31] *Id.* at 10–11 (citing 819 F.3d 758 (5th Cir. 2016)).

[32] *Id.* at 11.

[33] *Id.* at 11 (citing Rec. Doc. 9-3 at 7–9).

[34] *Id.* at 12 (citing Rec. Doc. 9-3 at 20–22).

[35] *Id.*

them."[36] Moreover, he similarly attests that at the Texaco Donaldsonville Refinery, he saw "Turner Industry workers were working on and opening pipes, vessels and equipment that was connected to the lines, columns and units that [he] worked upon and product that [he] was exposed to remained in those pipes, vessels, and equipment when [he] opened them."[37]

Plaintiff notes that his interactions with Turner occurred during what are termed "shutdowns" or "turnarounds," where production at a refinery is stopped to repair, clean, and replace existing equipment.[38] He cites an article entitled "The Management of Occupational Health Risks During Refinery Turnarounds," which states that factors such as the large number of personnel employed during a turnaround, the number of contracted companies involved, the temporary nature of the work, and the around-the-clock work schedule "complicate the control of the health risks when compared with normal refinery practice."[39] Plaintiff contends that this case is "identical" to *Washington v. Shell Oil, Co.*, where another section of this Court found that witness testimony that the plaintiff worked at Murphy Oil's facility when Lou-Con was opening lines and releasing fumes raised genuine issues of fact that could lead a reasonable jury to find that the plaintiff was exposed to benzene by Lou-Con while not under its employment.[40]

Finally, Plaintiff notes that under Louisiana law, the issue of causation is to be decided by a jury, and the standard is whether an exposure to the benzene-containing products was a

---

[36] *Id.* at 14 (citing Rec. Doc. 9-4).

[37] *Id.* (citing Rec. Doc. 9-4).

[38] *Id.* at 13.

[39] *Id.*

[40] *Id.* at 15.

"substantial factor" in bringing about Plaintiff's CML.[41] Plaintiff asserts that he "alleged exposures from Turner employees that created benzene emissions while working on turnaround and new construction jobs around him and will rely on expert opinions to show exposures from activities of Turner employees."[42] Therefore, Plaintiff contends that Removing Defendants have failed to meet their heavy burden of showing improper joinder of Turner and this matter should be remanded to state court.[43]

**B.    *Removing Defendants' Arguments in Opposition to the Motion to Remand***

In opposition, Removing Defendants argue that the motion to remand should be denied because Turner was improperly joined as a defendant in this matter.[44] In order to prevail in a claim against Turner, Removing Defendants assert that Plaintiff must prove that "Turner negligently exposed him to benzene and that the exposure substantially contributed to the development of his CML."[45] However, Removing Defendants note that during his deposition, Plaintiff testified that: (1) he was not employed by Turner; (2) he did not work on a premise owned or operated by Turner; (3) no Turner employee directed his work; and (4) he never worked in the same area with Turner employees at any facility.[46] Therefore, Removing Defendants assert that the undisputed evidence shows that Turner could not have exposed Plaintiff to benzene, and Plaintiff has no reasonable

---

[41] *Id.*

[42] *Id.* at 16.

[43] *Id.*

[44] Rec. Doc. 13 at 1.

[45] *Id.* at 2.

[46] *Id.*

basis for recovery against Turner.[47]

      Removing Defendants contend that the issue of whether Plaintiff pled a facially plausible claim against Turner is irrelevant, as Removing Defendants do not dispute that the allegations contained in the petition are facially plausible.[48] Removing Defendants argue that "a summary inquiry is appropriate here since the case has been pending for over two years, discovery is substantially complete and Defendants have identified specific evidence developed in the case that precludes recovery against Turner."[49] Therefore, Removing Defendants contend that Plaintiff's argument that the pleadings survive a Rule 12(b)(6) analysis is inapplicable to the improper joinder argument raised here.[50]

      Next, Removing Defendants assert that they removed the case after "Plaintiff unequivocally testified to discrete facts that preclude any recovery against Turner."[51] Although Removing Defendants recognize that it is beyond the scope of this motion, they assert that none of the defendants can be held liable "because exposure to benzene has not been demonstrated in the reliable medical and scientific literature to cause CML."[52] Furthermore, Removing Defendants note that to recover from Turner under both negligence and strict liability claims, "Plaintiff would have to show that Turner or its employees exposed Plaintiff to benzene in a manner such that it

---

[47] *Id.*

[48] *Id.* at 3.

[49] *Id.* (citing *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 766 (5th Cir. 2016)).

[50] *Id.* at 4.

[51] *Id.*

[52] *Id.* at 4, n.2.

was a substantial factor in causing his CML."[53] Removing Defendants point to Plaintiff's deposition testimony showing that he never worked with or around any Turner employees and that he did not know what units Turner employees worked at the Alliance Refinery.[54] Removing Defendants note that following their examination of Plaintiff, opposing counsel had the opportunity to question his client and develop facts to support claims against Turner, but he failed to do so.[55] Removing Defendants argue that this case is distinguishable from cases upon which Plaintiff relies, where courts have held that a lack of evidence is insufficient to establish improper joinder, because Plaintiff's testimony affirmatively proves that Turner could not be liable to Plaintiff.[56] Removing Defendants note that preliminary witness and exhibit lists were submitted before the state court, and "Plaintiff does not dispute that, other than the scant testimony he was able to offer, none of the witnesses specifically identified on his witness list gave any testimony pertaining to Turner" or that the trial exhibit list did not include any exhibits relating to Turner.[57]

Next, Removing Defendants argue that the Court should not consider the article entitled "The Management of Occupational Health Risks During Refinery Turnarounds" and Plaintiff's affidavit, which were attached to Plaintiff's motion to remand, because neither is competent summary-judgment-type evidence.[58] Specifically, Removing Defendants argue that the article is

---

[53] *Id.* at 4 (citing *Quick v. Murphy Oil Co.*, 93-2267, p. 10 (La. App. 4 Cir. 9/20/94); 643 So. 2d 1291, 1295).

[54] *Id.* at 5–6 (citing Rec. Doc. 1-8).

[55] *Id.* at 6.

[56] *Id.* at 7–8 (citing *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003); *Bradford,*, 2009 WL 667175; *Richoux*, 2008 WL 576242).

[57] *Id.* at 8–9.

[58] *Id.* at 10.

not authenticated and is not self-authenticating.[59] Furthermore, Removing Defendants assert that the article is subjective and not evidence of any fact, and a conclusion that Turner's presence on the job site demonstrates its potential liability cannot be drawn from the report.[60]

Removing Defendants also argue that Plaintiff's affidavit is inadmissible and irrelevant.[61] Removing Defendants assert that "the United States Supreme Court has made clear that in dealing with summary judgment evidence, 'a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity.'"[62] Removing Defendants contend that Plaintiff's deposition testimony shows that he lacks personal knowledge to provide information regarding the work Turner did at the refineries, and so the affidavit is not based on personal knowledge and cannot be considered.[63]

Removing Defendants assert that this case is distinguishable from *Davidson v. Georgia Pacific, LLC*, where the Fifth Circuit held that there was "some possibility" that the plaintiff had been exposed to asbestos at the defendant's worksite.[64] Unlike *Davidson*, Removing Defendants contend that "Plaintiff did not perform his work in the same areas or units as Turner, and there is no allegation that Turner manufactured or supplied benzene or products that contained benzene

---

[59] *Id.* (citing Fed. R. Evid. 901 and 902).

[60] *Id.* at 11.

[61] *Id.*

[62] *Id.* at 11–12 (quoting *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 806 (1999)).

[63] *Id.* at 12.

[64] *Id.* at 13–14 (citing 819 F.3d 767–68 (5th Cir. 2016)).

with which Plaintiff worked."[65] Given Plaintiff's testimony that he did not work in the same units as Turner employees, Removing Defendants argue that the affidavit does not "demonstrate or leave open the possibility that Turner caused Plaintiff to be exposed to any chemical or product that he contends contributed to his CML."[66] Defendants note that Plaintiff cites no legal authority to support the assertion that he should be allowed additional time to develop the facts that would support his claim against Turner.[67] Accordingly, because Plaintiff does not point to any competent summary-judgment-type evidence to suggest that Turner caused Plaintiff to be exposed to benzene, Removing Defendants argue that Turner is improperly joined.[68]

Finally, Removing Defendants assert that this case was timely removed within 30 days of Plaintiff's September 13, 2017 deposition, where Removing Defendants assert they first became aware that Turner was improperly joined.[69] Although Removing Defendants recognize that 28 U.S.C. § 1446(c)(1) generally precludes removal on the basis of diversity jurisdiction more than one year after commencement of the action, they note that the statute allows an exception where a plaintiff acted in bad faith to prevent removal.[70] Removing Defendants assert that Plaintiff has not attempted to develop any of the claims against Turner during the two years that this litigation has been ongoing; did not serve any discovery requests on Turner or any other defendant regarding the claims against Turner; failed to take any depositions of Turner or its employees; failed to

---

[65] *Id.* at 14.

[66] *Id.* at 14–15.

[67] *Id.* at 15.

[68] *Id.*

[69] *Id.*

[70] *Id.* at 16.

identify a fact witness that would testify regarding Turner; failed to identify any experts that would offer an opinion against Turner; failed to identify any exhibits pertaining to Turner; and failed to elicit testimony during his deposition to support his claims against Turner.[71]

In support of this argument, Removing Defendants cite *In re Propulsid Products Liability Litigation*, where another district judge in the Eastern District of Louisiana found that the plaintiff acted in bad faith to prevent removal by failing to serve discovery on non-diverse defendants, failing to take depositions of the non-diverse defendants, and failing to identify experts to offer opinions against the non-diverse defendants.[72] As a result, Removing Defendants assert that Plaintiff's actions constitute bad faith because "Plaintiff has no credible explanation for Turner's continued presence in this litigation, other than to prevent removal."[73] Accordingly, Removing Defendants argue that the motion to remand should be denied.[74]

## C.  *Plaintiff's Arguments in Further Support of Motion to Remand*

In the reply brief, Plaintiff again asserts that he has a reasonable basis for recovering against Turner as outlined by the Fifth Circuit in *Davidson v. Georgia Pacific, LLC*.[75] Plaintiff argues that his deposition testimony clearly shows that he has a possibility of recovering against Turner.[76] Specifically, Plaintiff notes that he identified the Gulf Alliance Refinery and the Texaco Donaldsonville Refinery as locations where he was exposed to benzene that contributed to the

---

[71] *Id.* at 16–17.

[72] *Id.* (citing MDL No. 1355, 2007 WL 1668752, at *1 (E.D. La. June 6, 2007)).

[73] *Id.*

[74] *Id.* at 18.

[75] Rec. Doc. 17 at 1 (citing 819 F.3d at 758).

[76] *Id.* at 2.

cause of his CML.[77] According to Plaintiff, at the Gulf Alliance Refinery he broke into lines, and he also tore out and moved vessels, valves, and heat exchangers.[78] Plaintiff testified that he used benzene supplied by the refinery to wash his tools.[79] At the Texaco Donaldsonville Refinery, Plaintiff testified that he worked on many different units, including a crude unit where benzene was present, and he would open and drain lines where gasoline or oil was present.[80] Plaintiff also points to his testimony that he recalled seeing Turner employees at both refineries, although defendants never asked what they were doing there.[81] Plaintiff contends that this testimony is sufficient to raise questions of fact regarding Turner's involvement in the benzene exposures.[82] Additionally, Plaintiff asserts that Removing Defendants cannot rule out that Plaintiff will ascertain additional evidence from Plaintiff's testimony at trial or during discovery.[83]

Next, Plaintiff asserts that the article he cited in his original brief is a peer-reviewed study relied on by his experts.[84] Furthermore, Plaintiff notes that Removing Defendants admit that Plaintiff testified that although he did not know what units Turner employees worked on, he knew they were on the jobsites.[85] Therefore, Plaintiff contends that his affidavit is admissible evidence

---

[77] *Id.*

[78] *Id.* at 3.

[79] *Id.*

[80] *Id.*

[81] *Id.* at 4.

[82] *Id.*

[83] *Id.*

[84] *Id.* at 3–4.

[85] *Id.* at 6–7.

and based on personal knowledge.[86]

Next, Plaintiff contends that removal of this case was untimely because it occurred more than one year after commencement of the action and Removing Defendants have failed to show that Plaintiff acted in bad faith to prevent removal.[87] Plaintiff notes that at the time the case was removed, he had just over two months left to complete discovery and take a corporate deposition of Turner. [88] Plaintiff also notes that the case was removed before he produced his expert reports.[89] Plaintiff also points to the fact that he was deposed on July 11, 2017, September 12, 2017, and September 13, 2017; but Removing Defendants waited until October 13, 2017, to remove this case.[90] Therefore, Plaintiff contends that the removal was not timely.[91]

Finally, Plaintiff asserts that Removing Defendants are incorrect in their argument that benzene does not cause CML, noting that the World Health Organization has confirmed that there is a positive association for benzene exposure and CML.[92] Plaintiff argues that he has "alleged exposures from Turner employees that created benzene emissions while working on turnaround and new construction jobs around him and will rely on expert opinions to show exposures from activities of Turner employees."[93] For these reasons, Plaintiff asserts that he has stated a viable

---

[86] *Id.* at 7.

[87] *Id.*

[88] *Id.*

[89] *Id.*

[90] *Id.* at 8.

[91] *Id.*

[92] *Id.*

[93] *Id.* at 10.

cause of action against Turner and the motion to remand should be granted.[94]

### III. Legal Standard

**A.       The Forum Defendant Rule**

"Federal courts are courts of limited jurisdiction. They possess only the power authorized by [the] Constitution and statute, which is not to be expanded by judicial decree."[95] Pursuant to the removal statute, a defendant may remove a state civil court action to federal district court if the federal court has original jurisdiction over the action.[96] A federal court has subject matter jurisdiction over an action under 28 U.S.C. § 1332 "where the matter in controversy exceeds the sum or value of $75,000" and the action "is between citizens of different states."[97] "When removal is based on diversity of citizenship, diversity must exist at the time of removal."[98] The removing party bears the burden of demonstrating that federal jurisdiction exists by a preponderance of the evidence.[99] Moreover, the removal statute must be strictly construed, and "any doubt about the propriety of removal must be resolved in favor of remand."[100]

Pursuant to 28 U.S.C. § 1441, an action that is otherwise removable based solely on diversity "may not be removed if any of the parties in interest properly joined and served as

---

[94] *Id.*

[95] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).

[96] 28 U.S.C. § 1441(a); *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 (2002).

[97] 28 U.S.C. § 1332(a)(1).

[98] *Texas Beef Grp. v. Winfrey*, 201 F.3d 680, 686 (5th Cir. 2000) (citing 14B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3723 (1998 ed.)).

[99] *See Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

[100] *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007) (internal citation omitted); s*ee also Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

defendants is a citizen of the State in which such action is brought."[101] This limitation is often referred to as the "forum defendant rule."[102] A violation of the forum defendant rule renders removal procedurally defective.[103]

## B.    *Timeliness of the Notice of Removal*

Generally, a notice of removal must be filed within 30 days of the receipt of a copy of the initial pleading by the defendant.[104] However, if the case is not originally removable, but it later becomes removable, the defendant must remove the case within 30 days of notice that the case has become removable.[105] Nevertheless, even if a defendant receives such notice that a case has become removable after the initial pleading, if it has been more than 1 year since the commencement of the action, the case may not be removed "unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."[106] The Fifth Circuit applies the "bad faith" exception when a party has "attempted to manipulate the statutory rules for determining federal removal jurisdiction, thereby preventing the defendant from exercising its rights."[107]

---

[101] 28 U.S.C. § 1441(b)(2).

[102] *See In re 1994 Exxon Fire Chem. Fire*, 558 F.3d 378, 391 (5th Cir. 2009).

[103] *Id.* at 392–94.

[104] 28 U.S.C. § 1446(b)(1).

[105] 28 U.S.C. § 1446(b)(3).

[106] 28 U.S.C. § 1446(c)(1).

[107] *Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 426 (5th Cir. 2003).

## C.     Improper or "Fraudulent" Joinder[108]

In this case, the parties do not dispute that Turner is a citizen of Louisiana, and its presence in the suit violates the forum defendant rule. Despite the presence of a forum defendant in this lawsuit, Removing Defendants argue that removal is proper because Plaintiffs have fraudulently joined Turner in order to avoid federal jurisdiction over this suit.

"The fraudulent joinder doctrine ensures that the presence of an improperly joined, non-diverse defendant does not defeat federal removal jurisdiction premised on diversity."[109] The party asserting improper joinder "bears a heavy burden of proving that joinder of the in-state party was improper."[110] The Fifth Circuit has long recognized two methods of improper joinder: (1) actual fraud in the pleading of jurisdictional facts, and (2) the inability of the plaintiffs to plead a cause of action against the non-diverse defendants in state court.[111] In this case, Removing Defendants allege that Turner is improperly joined because Plaintiff cannot plead a cause of action against Turner.

In *Smallwood v. Illinois Central Railroad Co.*, the Fifth Circuit stated that "the test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against

---

[108] The Fifth Circuit refers to "fraudulent joinder" as "improper joinder." *See Melder v. Allstate Corp.*, 404 F.3d 328, 329 (5th Cir. 2005). However, the term "fraudulent joinder" is still used in many Fifth Circuit cases. *See, e.g., Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532 (5th Cir. 2006).

[109] *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009) (internal citations omitted).

[110] *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 574 (5th Cir. 2004).

[111] *Crockett*, 436 F.3d at 532 (internal citations omitted).

an in-state defendant."[112] District courts may assess whether a plaintiff has "a reasonable basis of recovery under state law" in either of two ways.[113] First, "[t]he court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant."[114] Second, in rare cases, if "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry."[115]

If a court decides to "pierce the pleadings" when assessing a claim of improper joinder, it may "consider summary-judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff," and resolve "[a]ny contested issues of fact and any ambiguities of state law" in the plaintiff's favor.[116] However, a court does not assess "whether the plaintiff will actually or even probably prevail on the merits of the claim," but only determines whether there is "a possibility that the plaintiff might do so."[117] In other words, where courts choose to pierce the pleadings, the party asserting fraudulent joinder must provide evidence that "negate[s] the possibility" that the non-diverse party may be held liable.[118] The Fifth Circuit has stated that

---

[112] *Smallwood*, 385 F.3d at 573.

[113] *Id.*

[114] *Id.*

[115] *Id.*

[116] *Travis v. Irby*, 326 F.3d 644, 648–49 (5th Cir. 2003).

[117] *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308–09 (5th Cir. 2005).

[118] *Travis*, 326 F.3d at 650.

district courts should look at summary-judgment-type evidence at this stage of the proceedings only in those cases, "hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder."[119] Even in such cases, the district court's decision to pierce the pleadings and conduct a summary inquiry is within in its discretion.[120]

## IV. Analysis

Plaintiff argues both that the notice of removal was not timely and that Removing Defendants cannot meet their heavy burden of establishing that Turner was fraudulently joined. In response, Removing Defendants assert that the notice of removal was timely because it was filed within 30 days of Plaintiff's September 13, 2017 deposition, where Removing Defendants assert they first became aware that Turner was improperly joined. Accordingly, the Court addresses each of these issues in turn.

### A.      *Timeliness of the Notice of Removal*

Plaintiff asserts that Removing Defendants are precluded from removing this case because Removing Defendants failed to remove the action within 30 days of notice that the case had become removable as his deposition was taken on July 11, 2017, September 12, 2017, and September 13, 2017, but Removing Defendants waited until October 13, 2017, to remove the case.[121] Plaintiff also asserts that Removing Defendants failed to remove the case within a year of

---

[119] *Smallwood*, 385 F.3d at 573.

[120] *Id.*

[121] Rec. Doc. 9-1 at 2.

the commencement in state court.[122] In opposition, Removing Defendants assert that they removed the case within 30 days of Plaintiff's September 13, 2017 deposition, when they allege they first had notice that the case had become removable.[123] Moreover, Removing Defendant argue that Plaintiff acted in bad faith, so removal is permitted despite the fact that the action commenced almost two years before removal.[124] Specifically, Removing Defendants assert that Plaintiff acted in bad faith because he has not attempted to develop any of the claims against Turner during the two years that this litigation has been ongoing.[125]

Even assuming that Removing Defendants removed the case within 30 days of notice that it had become removable, Removing Defendants removed the case almost two years after it was filed in state court. Considering that Removing Defendants removed the case more than one year from its initial pleadings, Removing Defendants must show that Plaintiff acted in bad faith to prevent removal.

In support of their assertion that Plaintiff acted in bad faith to prevent removal, Removing Defendants cite *In re Propulsid Products Liability Litigation*.[126] As an initial matter, the Court notes *In re Propulsid Products Liability Litigation*, a decision by another district court, is not binding on this Court. Furthermore, the case is factually distinguishable from the instant matter. There, the plaintiff dismissed all of the non-diverse defendants over three years after the suit was

---

[122] *Id.*

[123] Rec. Doc. 13 at 15.

[124] *Id.*

[125] *Id.* at 16–17.

[126] MDL No. 1355, 2007 WL 1668752, at *1 (E.D. La. June 6, 2007)).

filed.[127] The plaintiff did not dispute the removing defendant's assertions that the plaintiff served no discovery on the non-diverse defendants, none of their depositions were ever taken, and the plaintiff never identified any experts to offer opinions against them.[128] Moreover, the district court found that the plaintiff had not given any justifiable reason for dismissing the non-diverse defendants over three years after suit was filed.[129]

Unlike in *In re Propulsid Products Liability Litigation* where the plaintiff dismissed the non-diverse defendants after failing to pursue her claims against them, here, Plaintiff maintains his claims against Turner, the forum defendant. Furthermore, Plaintiff notes that at the time the case was removed, he had just over two months left to complete discovery and take a corporate deposition of Turner.[130] Plaintiff also notes that the case was removed before he produced his expert reports, which Plaintiff contends he will rely on "to show exposures from activities of Turner employees."[131]

In *Steele v. Pro-Tech Foundation Repair*, this Court found that the removing defendant failed to show that the plaintiff acted in bad faith to prevent removal.[132] The Court found that the removing defendant had presented no evidence that the plaintiff brought a claim against the non-diverse defendant, who was dismissed from the case approximately nine years after it was initially

---

[127] *Id.* at *1.

[128] *Id.*

[129] *Id.*

[130] Rec. Doc. 17 at 7.

[131] *Id.* at 7, 10.

[132] Case No. 18-542, 2018 WL 1603506 (E.D. La. Apr. 2, 2018).

filed, in order to "manipulate the statutory rules for federal jurisdiction."[133] The Court noted that

the plaintiff had alleged that the removing defendant was not licensed to operate in Louisiana, so

it used the non-diverse defendant's license to perform the foundation repairs on the plaintiff's

house, and the plaintiff claimed that the non-diverse defendant was negligent in overseeing the

removing defendant's work.[134] During oral argument, the plaintiff's counsel also explained that

there was an agreement between the plaintiff's prior counsel and the removing defendant to

dismiss the non-diverse defendant from the suit.[135] Plaintiff's current counsel asserted that he

would not have made such an agreement based on his belief that there remains a viable cause of

action against the non-diverse defendant.[136] Based on these arguments, the Court concluded that

the removing defendant had failed to meet its burden of establishing that the plaintiff acted in bad

faith to prevent removal.[137]

Like in *Steele*, Removing Defendants present no evidence that Plaintiff acted in bad faith.

Instead, they rely only on the fact that Plaintiff allegedly failed to develop his claims against

Turner. However, as discussed above, Plaintiff notes that at the time the case was removed, he had

just over two months left to complete discovery and take a corporate deposition of Turner. [138]

Plaintiff also notes that the case was removed before he produced his expert reports, which Plaintiff

---

[133] *Id.* at *3 (citing *Tedford*, 327 F.3d at 426).

[134] *Id.* at *4.

[135] *Id.*

[136] *Id.*

[137] *Id.*

[138] Rec. Doc. 17 at 7.

contends he will rely on "to show exposures from activities of Turner employees."[139] Therefore, the Court finds that Removing Defendants have failed to meet their burden of establishing that Plaintiff acted in bad faith to "manipulate the statutory rules for federal jurisdiction."[140] Alternatively, for the reasons that follow, Removing Defendants cannot establish that Plaintiff acted in bad faith in maintaining his claims against Turner because Removing Defendants have failed to meet the heavy burden of establishing that Turner was improperly joined as a defendant in this matter.

**B.      Improper or "Fraudulent" Joinder**

In the Notice of Removal, Removing Defendants acknowledge that Turner is a forum defendant, but they assert that the citizenship of Turner should be disregarded because Turner was improperly joined as a defendant.[141]  In the motion to remand, Plaintiff first argues that the detailed allegations against Turner in the petition would easily defeat a Rule 12(b)(6) motion to dismiss because the petition alleges that "each of the Defendants knew or should have known through industry and medical studies that there were health hazards inherent in the benzene products they were manufacturing or working around."[142] In response, Removing Defendants do not dispute that the allegations contained in the petition are facially plausible and could survive a Rule 12(b)(6) motion to dismiss.[143] Removing Defendants argue that "a summary inquiry is appropriate here since the case has been pending for over two years, discovery is substantially complete and

---

[139] *Id.* at 7, 10.

[140] *Tedford*, 327 F.3d at 426.

[141] Rec. Doc. 1 at 5.

[142] Rec. Doc. 9-1 at 4.

[143] Rec. Doc. 13 at 3.

Defendants have identified specific evidence developed in the case that precludes recovery against Turner."[144]

"If a plaintiff can survive a Rule 12(b)(6) challenge for failure to state a claim, there is ordinarily no improper joinder."[145] However, as noted above, in rare cases, if "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry."[146] Considering that both Plaintiff and Removing Defendants agree that Plaintiff's claims against Turner could survive a Rule 12(b)(6) challenge and both sides present summary-judgment-type evidence in connection with this motion, the Court will exercise its discretion to pierce the pleadings and conduct a summary inquiry.

Plaintiff relies on *Davidson v. Georgia Pacific, LLC* to support the assertion that remand is appropriate here because his deposition testimony shows that he has a possibility of recovering against Turner. In *Davidson*, the plaintiffs, surviving heirs to the decedent William Davidson ("Decedent"), filed a survival action and wrongful death claims in state court arising out of Decedent's alleged exposure to asbestos and death from mesothelioma.[147] The plaintiffs alleged that Decedent was exposed to asbestos at Poulan Chainsaw, which was one of Decedent's jobsites, and named as defendants two non-diverse entities who were alleged to have removed and installed the asbestos-containing insulation at that site.[148]

---

[144] *Id.*

[145] *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016).

[146] *Smallwood*, 385 F.3d at 573.

[147] *Davidson*, 819 F.3d at 761.

[148] *Id.*

Before his death and the initiation of the suit at issue, Decedent had filed his own asbestos action, which was litigated in federal court and in which he gave two depositions.[149] The diverse defendants removed the surviving heirs' case within 30 days of service of the petition arguing that substantial discovery was completed in Decedent's earlier suit and, based on the testimony given by him in that litigation, that the two non-diverse defendants were improperly joined.[150] Specifically, during his first deposition, Decedent was asked if he believed he was exposed to asbestos at Poulan Chainsaw, and he responded that "[i]t's a possibility . . . it's very possible."[151] However, in his second deposition, Decedent testified that he did not recall whether the pipes and machinery on which he worked at Poulan Chainsaw were insulated and did not remember seeing anyone performing insulation work at that facility.[152]

The district court denied the plaintiff's motion for remand based on the record from Decedent's earlier lawsuit, but the Fifth Circuit reversed that determination.[153] The Fifth Circuit found that, although there was no evidence of the two non-diverse defendants' liability, the record developed in Decedent's lawsuit left open "some possibility" that Decedent was exposed to asbestos at Poulan Chainsaw and that one or both of the non-diverse defendants were responsible for the removal or installation of that asbestos.[154] The Fifth Circuit reasoned that "[a]lthough a court may pierce the pleadings and consider summary-judgment-type evidence, the standard for

---

[149] *Id.*

[150] *Id.* at 761–62.

[151] *Id.* at 761.

[152] *Id.* at 761–62.

[153] *Id.* at 767.

[154] *Id.*

finding improper joinder is not the summary judgment standard in which an absence in the plaintiff's proof alone can be fatal."[155]

Removing Defendants assert that this case is distinguishable from *Davidson*, where the Fifth Circuit held that there was "some possibility" that the plaintiff had been exposed to asbestos at the defendant's worksite.[156] Unlike *Davidson*, Removing Defendants assert that "Plaintiff did not perform his work in the same areas or units as Turner, and there is no allegation that Turner manufactured or supplied benzene or products that contained benzene with which Plaintiff worked."[157] Therefore, Removing Defendants contend that there is no possibility that Plaintiff could recover against Turner.[158] In reply, Plaintiff points to his testimony that he recalled seeing Turner employees at both refineries, which he contends is sufficient to raise questions of fact regarding Turner's involvement in the benzene exposures.[159] Accordingly, the Court must look to Plaintiff's deposition testimony to determine if there is "some possibility" that Plaintiff could recover against Turner.[160]

During his deposition, Plaintiff identified the Gulf Alliance Refinery and the Texaco Donaldsonville Refinery as locations where he was exposed to benzene, which he believed contributed to the cause of his CML.[161] According to Plaintiff, at the Gulf Alliance Refinery he

---

[155] *Id.* at 766.

[156] Rec. Doc. 13 at 13–14.

[157] *Id.* at 14.

[158] *Id.*

[159] Rec. Doc. 17 at 4.

[160] *Davidson*, 819 F.3d at 767.

[161] Rec. Doc. 9-2 at 7–9.

broke into lines, and he also tore out and moved vessels, valves, and heat exchangers.[162] Plaintiff testified that he used benzene supplied by the refinery to wash his tools.[163]

At the Texaco Donaldsonville Refinery, Plaintiff testified that he worked on many different units, including a crude unit where benzene was present, and he would open and drain lines where gasoline or oil was present.[164] Plaintiff stated that he performed tear out and replacement work at the Texaco Donaldsonville Refinery.[165] Plaintiff stated that he believed gasoline was produced on the unit, and there was always residue product left in the lines.[166] Plaintiff described that some lines had a lot of gasoline or oil in them when he opened them,[167] and he would drain five to thirty gallons of product out of the lines, which took between an hour and three hours to drain.[168]

Plaintiff testified that Turner employees also worked on at the Gulf Alliance Refinery and the Texaco Donaldsonville Refinery jobsites.[169] Plaintiff stated that he did not work directly with Turner employees,[170] but he stated that Turner employees would "be on the job sites that I'd been on."[171] When asked what units the Turner employees worked on Plaintiff stated, "I don't know the

---

[162] *Id.* at 4–5, 23.

[163] *Id.* at 28–29.

[164] *Id.* at 10.

[165] *Id.* at 14.

[166] *Id.* at 16–17.

[167] *Id.* at 18.

[168] *Id.* at 19.

[169] *Id.* at 25–27.

[170] *Id.* at 26.

[171] *Id.* at 25.

units. They were just on."[172] Plaintiff also testified that he did not remember the names of any of the units where he himself worked.[173] Considering Plaintiff's testimony as a whole it appears that he was testifying he saw Turner employees at the refineries, although he did not work with them directly and did not know the names of the units where they worked.

Plaintiff notes that during his deposition he was not asked about the work he saw Turner employees doing.[174] Therefore, he details that information in an affidavit attached to the instant motion. In the affidavit, Plaintiff attests that at the Alliance Refinery he saw "Turner Industry workers opened up and performed work on the vessels, equipment and pipes that were connected to the pipes, vessels and equipment that [he] was working upon and product that [he] was exposed to remained in those pipes, vessels, and equipment when [he] opened them."[175] At the Texaco Donaldsonville Refinery, Plaintiff attests that he saw "Turner Industry workers were working on and opening pipes, vessels and equipment that was connected to the lines, columns and units that [he] worked upon and product that [he] was exposed to remained in those pipes, vessels, and equipment when [he] opened them."[176] Removing Defendants argue that Plaintiff's deposition testimony shows that he lacks personal knowledge to provide information regarding the work Turner did at the refineries, and so the affidavit is not based on personal knowledge and cannot be considered.[177] Removing Defendants misconstrue Plaintiff's testimony by arguing that Plaintiff

---

[172] *Id.* at 26–27.

[173] *Id.* at 23.

[174] Rec. Doc. 9 at 12.

[175] Rec. Doc. 9-4 at 2.

[176] *Id.*

[177] Rec. Doc. 13 at 12.

did not have personal knowledge of the work that Turner performed because, as discussed above, Plaintiff did testify that he saw Turner employees at the refineries although he did not know the names of the units where they worked. Accordingly, the Court will consider the affidavit because it is based on Plaintiff's personal knowledge.[178]

Plaintiff brings claims against Turner for negligence and strict liability. Under Louisiana law, to recover against Turner, Plaintiff must show that Turner exposed Plaintiff to benzene and that the exposure caused Plaintiff's injury.[179] "[C]ause-in-fact is found when defendant's conduct was a substantial factor in the injury; it need not be the sole cause."[180] Based on Plaintiff's deposition testimony that he was exposed to benzene while opening pipes at the Gulf Alliance Refinery and the Texaco Donaldsonville Refinery and his affidavit stating that Turner employees were working on and opening pipes that were connected to the lines, columns, and units that Plaintiff worked on, there remains some possibility that Plaintiff could recover against Turner.

Removing Defendants bear the heavy burden of proving that joinder of Turner was improper.[181] Considering Plaintiff's affidavit stating he was exposed to benzene after Turner employees opened the pipes, the Court cannot find that Removing Defendants have satisfied their burden of negating the possibility that Turner may be held liable in this action.[182] Removing

---

[178] The Court need not consider Removing Defendants' other objection to the article Plaintiff relies upon as it is unnecessary to consider the article in deciding this motion.

[179] Although Plaintiff asserts both negligence and strict liability claims against Turner, "the standards for deciding causation are the same [for each claim]." *Jones v. Peyton Place, Inc.*, 95-0574 (La. App. 4 Cir. 5/22/96); 675 So. 2d 754, 762 (citing *Fontenot v. Fontenot*, 93-2479 (La. 4/11/94); 635 So. 2d 219, 221).

[180] *Manuel v. Shell Oil Co.*, 94-590 (La. App. 5 Cir. 10/18/95); 664 So. 2d 470, 475 (citations omitted) (applying the substantial factor causation standard for benzene exposure).

[181] *Smallwood*, 385 F.3d at 574.

[182] *Travis*, 326 F.3d at 650.

Defendants have not offered any evidence that would negate the possibility of Turner's liability. Furthermore, Plaintiff's deposition testimony indicates that he was exposed to benzene while working around employees of Turner.

On a motion to remand based on fraudulent joinder, the Court cannot assess "whether the plaintiff will actually or even probably prevail on the merits of the claim," but only determines whether there is "a possibility that the plaintiff might do so."[183] Furthermore, all "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."[184] Considering that it is not clear that Plaintiff will be unable to prevail on the claims against Turner, the forum defendant, the Court finds that this matter must be remanded to the state court from which it was removed.[185]

## V. Conclusion

Based on the foregoing, the Court finds that the removal of this case was untimely in that the case was removed more than one year after the case was filed in state court. Moreover, because Removing Defendants cannot meet their burden in showing Plaintiff acted in bad faith by delaying discovering its claim against Defendant Turner to manipulate remand, this case does not fall into an exception allowing removal more than a year after the suit was filed in state court. Finally, even if the case was removed timely, Defendant Turner is a citizen of the forum state, barring removal of the case. Removing Defendants failed to meet their heavy burden to overcome the forum defendant bar to removal because they failed to show Turner was fraudulently joined. Accordingly,

---

[183] *Guillory*, 434 F.3d at 308–09.

[184] *Acuna*, 200 F.3d at 339.

[185] *In re 1994 Exxon Fire Chem. Fire*, 558 F.3d at 392–94.

**IT IS HEREBY ORDERED** that Plaintiffs' "Motion to Remand" [186] is **GRANTED** and this matter is remanded to the Civil District Court for the Parish of Orleans, State of Louisiana.

**NEW ORLEANS, LOUISIANA**, this 31st day of July, 2018.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[186] Rec. Doc. 9.